UNITED STATES ex rel. GANNON v. GEORGETOWN COLLEGE.  87

D. C.]                           Syllabus.

the proper service would be upon the parties. Many of these, it seems, are nonresidents. As service was made upon the attorney of record for the parties in the court below, and who appeared here on behalf of this motion, we think sufficient notice of the appeal has been given.

It may be that the decree appealed from was such a final decree as should have been appealed from to this court without leave. The parties, however, being in doubt, made their application for a special appeal, which has been allowed. The appeal bond was filed in sufficient time, and there can be no question but that the appeal is regularly before the court.

One of the provisions of the rule of this court applying to transcripts on regular appeals seems not to have been observed in this case, but, as no essential part of the record seems to have been omitted, the appeal would not be dismissed for failure to observe the requirements of the rule where the omission has not operated to the prejudice of the appellee.

Another ground of the motion is that certain of the necessary parties defendant to the bill of review were omitted therefrom. It appears that the parties omitted were four formal parties as husbands of the real parties in interest. No objection was made to the bill on this ground in the court below, and the appeal cannot be dismissed for that reason. *Landram* v. *Jordan,* 25 App. D. C. 296.

The motion is *denied, with costs.*

---

# UNITED STATES ex rel. GANNON v. PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE.

### MANDAMUS; MOOT QUESTIONS.

1. An appeal from an order dismissing a petition for mandamus to compel the authorities of a college to receive the relator as a student in the freshman class thereof will be dismissed, where, at the time of the hearing of such appeal, the college year has ended.

88 UNITED STATES ex rel. GANNON v. GEORGETOWN COLLEGE.

Statement of the Case. [28 App.

2. *Semble*, that the action of a college in expelling a student for unauthorized leave of absence is warranted.

Nos. 1670 and 1675.   Submitted June 6, 1906.   Decided June 13, 1906.

HEARING on two appeals by the petitioners from orders of the Supreme Court of the District of Columbia dismissing their petitions for the writ of mandamus.    *Appeals dismissed.*

The COURT in the opinion stated the facts as follows:

This question comes before us upon two petitions for mandamus.   In the first, filed February 27th, 1906, the relator, Edward Gannon, by his father and next friend, Frank S. Gannon, filed a petition against the president and directors of Georgetown College, and, in the second, filed April 11th, 1906, Frank S. Gannon, the father of Edward Gannon, filed his petition for mandamus against the same defendant.   Both petitions were filed in the supreme court of the District of Columbia.   Since both petitions are before us, we need not consider whether the petition should have been filed by Frank S. Gannon, the father of Edward Gannon, or by the father as next friend of his son, late a student in Georgetown College, a private corporation in the District of Columbia.   There is no material difference between the two petitions.   They each state the following matters:

Frank S. Gannon, of New York city, is the father of Edward Gannon, who is eighteen years old.   In September, 1905, the father sent his son to Georgetown College, where he entered the freshman class.   At that time the father paid $206, wherefor his son was to be furnished a room in the dormitory for the school year, beginning in September, 1905, and ending in June, 1906, the son also to receive the instruction and facilities of education given to the freshmen, the father having agreed to pay the further sum of $206 about March, 1906, which payment would entitle his son to board and tuition "up to and until the end of the school year in the month of June, 1906."   The father's contract was according to the usual terms made by the college.

Thereupon the son became entitled to his room and board and

to the educational facilities and privileges given members of the freshman class throughout the college year from September, 1905, to June, 1906, subject to reasonable regulations and restrictions.

About September, 1905, the son entered the college, occupied his room, boarded in the college, and enjoyed all its educational benefits and privileges. He was an orderly and diligent student, maintaining excellent standing in his class, and was obedient to the college discipline.

About January 4th, 1906, the father requested his son to return to New York on January 7th to be godfather at the baptism of the infant daughter of his brother, and to prolong his stay until January 9th in order to be present at the wedding of his only sister. The father requested the president of the college to grant leave of absence from college from the night of Saturday, January 6th, until the morning of Wednesday, January 10th, so that the son might attend both ceremonies. He wrote to the president of the college urging this request. On January 5th, 1906, the Rev. D. H. Buel, S. J., president of the college, telegraphed the father that the request for the absence of his son Edward was refused, and that he would explain by letter. On January 6th the father telegraphed President Buel as follows: "I am sure you would see as I do that Edward's presence here is of the utmost importance if you knew the circumstances. I am obliged to ask you to make an exception in this instance, and trust to the future to show that I am right,"—and on the same day, through his secretary, President Buel sent the following telephone response to the father: "The president of the college says that he is very sorry if he displeases you, but he cannot bring himself around to agree with your views and to have Edward to go to New York. You will have to withdraw him from the college if you want to do this. Wire or telephone. Edward can leave on the midnight train. The president says that he will be at the college this evening until 7:30."

The father replied to this in writing, in substance saying, he was sure he was within his right, and that his son was doing right in attending the wedding of his sister and the baptism of

90 UNITED STATES ex rel. GANNON v. GEORGETOWN COLLEGE.

Statement of the Case.                    [28 App

his niece. On January 5th, 1906, the son applied to Father Lyons, prefect of discipline in the college, who said he had endeavored to persuade the president to recede, but without success, and so at midnight on Saturday, January 6th, 1906, the son took the train for New York. On January 9th, an hour before the wedding, the father received word from President Buel that his son's name had been erased from the books of the college, that the son would not be readmitted, and that his effects had been shipped to New York. On January 10th, the father received a letter which enclosed a statement of account between the college and his son and a check for the money properly due the father and returned to him.

The father, by his counsel, returned the check, electing to stand upon his contract with the college. His son tendered himself, and now by the petition tenders himself, ready to comply with the terms of the contract and continue his studies and attendance as a member of the freshman class of the college, and the father proffered full compliance in respect of further payments. The president caused the property and effects of the son to be packed and sent to the son in New York city. The father says he consulted several Jesuit Fathers connected with educational institutions conducted by the society and controlled by the same rules and regulations as is Georgetown College, and that these persons characterized the condition attempted to be imposed upon the son as unreasonable. The father had sent four of his seven sons to Georgetown College and the rest to other Jesuit institutions, and in his petition the father avers that the action of the president was arbitrary, unreasonable, and unjust, and upon information avers that, prior to such action of the president, the faculty had taken no action adverse to his son. The petitioner says that it is now the middle of the school year, that his son prosecuted his studies with diligence, industry, ability, and success, and that the action of the college, by its president, in expelling his son, is a stigma upon the latter and a serious injury to him, and that his son cannot enter another institution without losing the college year.

The petitioner therefore prays that the writ of mandamus may issue against the defendant commanding the president and

UNITED STATES ex rel. GANNON v. GEORGETOWN COLLEGE. 91

D. C.]                    Opinion of the Court.

directors of Georgetown College to restore the son to all the rights he was entitled to as a student of the college and a member of the freshman class.

*Mr. Wilton J. Lambert* for the appellant.

*Mr. George E. Hamilton, Mr. M. J. Colbert,* and *Mr. John J. Hamilton* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

This cause was submitted and argued June 5th, 1906, and the consideration now given it occurs four days thereafter. The college year has ended. That freshman class no longer exists, its members having been advanced to the next higher class. It is beyond the power of this court, therefore, or of any court, to direct or secure for the petitioner's son the relief prayed for in both of these petitions for mandamus. Therefore we will not decide whether or not the father or the son, under these petitions, is entitled to this remedy, or, if one of them be entitled, whether, upon the facts of the petitions and respondent's answers, such relief should be granted if the court decided it had power.

In *Tennessee* v. *Condon,* 189 U. S. 64, 47 L. ed. 709, 23 Sup. Ct. Rep. 579, certain parties, by a bill in equity, sought to dispossess persons unlawfully holding certain public offices, and to secure the induction to such offices of the complainants. It appearing to the Supreme Court that the terms of office of all the relators except the county judge had expired before the cause was argued in the Supreme Court on March 11th and 12th, 1903, and that the term of the office of county judge had ended in 1902, the case was disposed of without a decision of the question of importance involved in the litigation, and for the following reasons: "If we were to hold that the act could be subjected to the test of the 14th Amendment, and that it could not stand that test, we should do nothing more than reverse the decree below and remand the cause, and, as such a judgment would be ineffectual, we must decline to intimate any

92 UNITED STATES ex rel. GANNON v. GEORGETOWN COLLEGE.

Opinion of the Court.                                    [28 App.

opinion on the subject. 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' Mr. Justice Gray, *Mills* v. *Green,* 159 U. S. 651, 653, 40 L. ed. 293, 294, 16 Sup. Ct. Rep. 132."

In *Jones* v. *Montague,* 194. U. S. 147, 153, 48 L. ed. 913, 915, 24 Sup. Ct. Rep. 611, the court approved *Mills* v. *Green,* and said: "The thing sought to be prohibited has been done, and cannot be undone by any order of court. The canvass has been made, certificates of election have been issued, the House of Representatives (which is the sole judge of the qualifications of its members) has admitted the parties holding the certificates to seats in that body, and any adjudication which this court might make would be only an ineffectual decision of the question whether or not these petitioners were wronged by what has been fully accomplished. Under those circumstances, there is nothing but a moot case remaining, and the motion to dismiss must be sustained."

And quite recently in *Security Mut. L. Ins. Co.* v. *Prewitt,* 200 U. S. 446, 449, 50 L. ed. 545, 26 Sup. Ct. Rep. 314, 315, the court said: "The writ of error in this case was filed January 27th, 1905, and the license was granted July 1st, 1904, and expired by its terms, if not sooner revoked, on the 1st day of July, 1905. The permit, even if illegally revoked prior to that time, became a dead letter on July 1st, 1905, so far as constituting any authority to the company to remain in the State and do business therein. If the court should now assume to cancel the revocation, it could not thereby reinstate the permit, which has already expired, and the company would still be without power to do business in the State until another permit should

be granted. To adjudge that the old permit remained good until the expiration of the year is to adjudge an abstract question, as no relief can be now awarded concerning it. Since the writ of error was filed the permit has ceased to have any effect, and, therefore, an event has occurred which renders it impossible for this court to grant any effectual relief in favor of plaintiff in error. In such case the court will dismiss the writ of error."

Obeying these rulings, we will dismiss this appeal from the judgment of the learned court below in this case. In our opinion, however, we should add that the record in this case shows that Edward Gannon, a student, gained and maintained proficiency in his studies, that he was simply dismissed for absenting himself and attending the family gatherings occasioned by the wedding of his sister and the baptism of his niece. The college authorities certify of him that "during his stay at Georgetown College his conduct was most exemplary and his application to his studies all that could be desired." It appears further that father and son naturally wished the absent son to be home, and that the father too confidently anticipated acquiescence in his very natural request. It is due to the president of Georgetown College, and to that very valuable institution itself, to remember that the location of the college at the capital, which so many people throughout the country visit, caused relatives frequently to withdraw students from their studies for hours, or even days, until the absenteeism grew to be an abuse and the absence of some students discouraged the teachers and prejudiced the discipline and attendance of other students. It happened that early in the college year the president, by letter, notified the parents or guardians of all students that in case parents could not bring themselves to accept the view of the president and faculty and their insistence upon the regular and unfailing attendance of students, these authorities preferred to have parents withdraw their sons from Georgetown College. The refusal of the president to permit young Gannon to go to his home on this occasion may be regarded as a strict enforcement of discipline, but it is manifest that the president believed that strict adherence to the new policy against ab-

senteeism under all the circumstances was to the advantage of the whole student body. It appears that the faculty approved the action of the president. Had we deemed it necessary to decide the case upon the record, we would not have been unmindful that this college is a private corporation, and it has discretionary power to regulate the discipline of the student in accordance with the rules and regulations to which the student submitted himself when he entered the college. We think it is better, however, to decide only actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions, and not to declare rules of law which cannot affect the matter in issue in the case before us. By no fault of either party the college year has ended before this court could have intervened if it had determined to do so.

These appeals will be dismissed, and it is so ordered.

*Dismissed.*