## TENNESSEE *v.* CONDON.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 209. Argued March 12, 13, 1903.—Decided April 6, 1903.

It is the duty of this court to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

When, pending an appeal, it becomes, without any fault on the part of the defendant, impossible for this court to grant any effectual relief to the plaintiff in error even if it should decide the case in his favor, the appeal will be dismissed. *Mills v. Green,* 159 U. S. 651, followed.

THIS was a bill filed in the Chancery Court of Knox County, Tennessee, under the statute in that behalf, in the name of the State, " on the information of " T. A. Rambo and G. L. Maloney, G. H. Strong, S. L. England, Sam Vance, J. F. C. Harrell and R. L. Peters against Stephen P. Condon, T. T. McMillan and James Rich, and H. C. Anderson, representing " that at the January term, 1898, G. H. Strong and T. A. Rambo were duly and legally elected by the County Court of Knox County, Tennessee, members of the pike commission of Knox County for the term of four years, which would make their terms of office expire in January, 1902, and G. L. Maloney, who is the judge of Knox County, Tennessee, is by operation of the law *ex officio* chairman of said commission. The said Sam Vance and J. F. C. Harrell were duly elected members of the said workhouse commission by the said County Court of Knox County, Tennessee, at its January term, 1901, which would make their terms of office expire in 1903. The said S. L. England and I. N. White were duly elected workhouse commissioners of Knox County, Tennessee, at its January term, 1900, which would make their terms of office expire in 1902, and the said G. L. Maloney as judge of the county is *ex officio* chairman of the said commission. The said R. L. Peters was elected superintendent of the workhouse in January, 1898, which would make his term of office expire in January, 1902. All of said officers were duly and legally elected and inducted into their respective offices and assumed the duties thereof, and up to the time of the qualification of defendants, to wit, on March 2, 1901, continued to perform the duties and exercise the functions and receive the emoluments pertaining to said offices."

The bill then averred that, on February 8, 1901, an act of the General Assembly of the State of Tennessee was approved by the governor, and went into effect, entitled : " An act to create a board of public road commissioners, to regulate the laying out and working of public roads in this State, in counties having a population of not less than 70,000 and not more than 90,000, under the Federal census of the year 1900, or any subsequent Federal census, and to provide a method for the management

and control of county workhouses in counties coming under the provisions of this act."

That in pursuance of the act, the governor of Tennessee, on February 16, 1901, appointed Stephen P. Condon, James Rich and T. T. McMillan as the board of public road commissioners; that Condon was appointed superintendent of public roads, and the other two associate members of the road commission; that the governor had issued to defendants commissions as such public road commissioners; and that they gave bond and qualified March 2, 1901, "and are now attempting to perform the duties of the said offices."

That defendants had in fact ousted the pike commissioners, the workhouse commissioners and superintendent from their respective positions, and deprived them of their privileges and powers; and that H. C. Anderson had been elected by defendants manager of the workhouse.

Complainants further represented that the act of February 8, 1901, was in plain violation of the constitution of the State of Tennessee; illegal, null and void; and "not effective to deprive the said parties of the several offices aforesaid, to which they were regularly elected, or of the rights, powers, privileges and emoluments thereof," and that defendants "are unlawfully holding and exercising said offices of public road commissioners and superintendent of roads and associate members, and that they are usurpers of said offices."

The prayer was (1) for process; (2) "that the said defendants may be enjoined from holding the said offices of public road commissioners or superintendent of public roads or associate members of said road commission, or manager of the workhouse, or from exercising any of the powers and rights which the said act of February 8, 1901, attempts to confer upon them, and that they may be enjoined from receiving any of the emoluments appertaining to the said offices under and by virtue of the said unconstitutional and void act, and that upon final hearing said injunction may be made perpetual;" (3) that the defendants be required to execute a bond to indemnify and hold harmless; (4) "that upon final hearing a decree may be rendered declaring that the said act of Febru-

ary 8, 1901, is unconstitutional, null and void, and that the same confers no right upon the defendants, and that the defendants are not entitled to exercise any of the powers and privileges therein contained, or to enjoy any of the rights and emoluments therein given to them, and that they be required to surrender same and turn over all the powers, property and privileges thereof to the rightful owners aforesaid ; " (5) and for general relief.

On March 21, 1901, an application for injunction was denied, and on March 23d the bill was amended by striking out the third clause of the prayer. Defendants filed a demurrer March 29, 1901, which, on the next day, was sustained and the bill dismissed. The case was then carried to the Court of Chancery Appeals, and it was there contended, on errors assigned, that the act of February 8, 1901, was invalid because in violation of the Fourteenth Amendment to the Constitution of the United States as well as of the state constitution. The Court of Chancery Appeals affirmed the judgment of the chancellor, August 29, 1901, and an appeal was prosecuted to the Supreme Court of the State, where it was again alleged in the assignment of errors that the act in question was in violation of the state constitution and of the Fourteenth Amendment. The Supreme Court held, on November 15, 1901, that the statute was not in violation of either, and affirmed the decrees of the chancellor and of the Court of Chancery Appeals. 108 Tennessee, 82. Thereupon a writ of error was sued out from this court, and the record was filed and the cause docketed December 10, 1901. No motion was made to advance the case, and it came on for argument and was argued March 12 and 13, 1903.

*Mr. G. W. Pickle* for plaintiffs in error. *Mr. J. W. Green* was with him on the brief.

*Mr. Joshua W. Caldwell* for defendants in error. *Mr. Charles T. Cates, Jr.*, was with him on the brief.

Mr. Chief Justice Fuller, after making the foregoing statement, delivered the opinion of the court.

This was a proceeding under provisions of the Code of Tennessee authorizing a bill in equity to be filed " whenever any person unlawfully holds or exercises any public office or franchise within this State." Shannon's Tenn. Code, (1896) § 5165, cl. 1 ; § 5167.

By sections 5168 and 5169 it is provided that the suit may be brought " by the attorney general for the district or county, when directed so to do by the General Assembly, or by the governor and attorney general of the State concurring ; " or " on the information of any person, upon such person giving security for the costs ; " when the attorney general for the district or county may institute the proceeding without direction. *State* v. *Campbell*, 8 Lea, 74, 75.

Such was this suit, which was not brought by direction of the General Assembly, or of the governor and attorney general of the State ; but was instituted at the instance of persons superseded in public office by an act of the General Assembly (approved by the governor and carried into effect by him) which they charged was unconstitutional. Acts 1901, c. 8.

The question of constitutionality had been raised in an application for mandatory injunction to compel the county judge to approve the bonds of the persons appointed commissioners under the act, the writ had been awarded and obeyed, and the decree was affirmed and the act sustained by the Supreme Court at the same time that the decree in this case, subsequently brought, was affirmed. *Condon* v. *Maloney*, 108 Tennessee, 75, 82. But the Supreme Court also ruled in the prior case that as the writ had been obeyed, it had spent its force, so that even if they differed with the chancellor as to the use of the particular process, an objection therein urged, a reversal of his decree " could not undo what had been done," and to enter it, " would be an idle ceremony."

In the circumstances this case assumed the aspect of a civil contest between individuals, and not of a prerogative writ to correct usurpation of office.

Sections 5175, 5176, 5177 and 5180 are as follows :

" 5175. Whenever the action is brought against a person for usurping an office, in addition to the other allegations, the

name of the person rightfully entitled to the office, with a statement of his right thereto, may be added, and the trial should, if practicable, determine the right of the contesting parties.

"5176. If judgment is rendered in favor of such claimant, the court may order the defendant to deliver to him, upon his qualifying as required by law, all books and papers belonging to the office in his (defendant's) custody, or under his control, and such claimant may thereupon proceed to exercise the functions of the office.

"5177. Such claimant, in this event, may also, at any time within one year thereafter, bring suit against the defendant, and recover the damages he has sustained by reason of the act of the defendant."

"5180. When a defendant, whether a natural person or a corporation, is adjudged guilty of usurping, unlawfully holding, or exercising any office or franchise, judgment shall be rendered that such defendant be excluded from the office or franchise, and that he pay the costs."

In *State ex rel. Curry* v. *Wright,* 5 Heiskell, 612, it was held that the bond given in case of appeal in an action for usurpation of office need be only for costs, and the court, after referring to sections 5176, 5177 and 5180, (by the prior numbers,) said :

"These provisions are specific and clear that the matter in contest to be decided is the usurpation of the office or franchise; and the judgment, exclusion from that office or franchise; and the money judgment to be given is for costs, and the damages, if any have accrued, are provided for in another suit to be brought within a year after the judgment.

"The provision, 'that the suit will be conducted as other suits in equity,' only means that it shall be conducted as such a suit, to the attainment of the results above indicated, but cannot be held to include an inquiry into the damages sustained."

The present case was argued March 12 and 13, and it appears on the face of the bill that the terms of office of all the relators, except the county judge, expired before that day. And this was true as to him because we find, by reference to

Articles VI and VII of the constitution of Tennessee, and *State* v. *Maloney*, 92 Tennessee, 62, that his then term of office as county judge terminated in 1902.

As to the defendants the bill shows that defendant Anderson was merely a subordinate appointee of his co-defendants, and that they had been appointed by the governor commissioners under the act of February 8, 1901. That act provided for the appointment of three commissioners, to " hold their offices until the next general election of county officers, when their successors shall be elected by the people, and every two (2) years thereafter said offices shall be filled by popular election." The next general election of county officers referred to was held, according to section 1154 of the Code, in August, 1902, so that these commissioners were appointed to serve until that date, and their temporary commissions then terminated.

We cannot assume that relators, who were originally elected by the county court, would hold over, and manifestly the provisional title of defendants has determined. It follows that the relief as prayed cannot now be granted.

There are cases in *quo warranto* in which judgment of ouster has been entered although the term of the person lawfully entitled had expired, and also where informations have been retained, when the statute provided for fine or damages, but here the proceeding cannot now be maintained as on behalf of the public, and considered, as counsel insists it should be, as merely a contest between two sets of officials and not between the State and its officials, the state courts would be at liberty to treat it as abated, and the mere matter of costs cannot be availed of to sustain jurisdiction. See *Boring* v. *Griffith*, 1 Heiskell, 456, 461 ; *State* v. *McConnell*, 3 Lea, 332 ; *Williamson County* v. *Perkins*, 39 S. W. Rep. 347 ; *State* v. *Lindsey*, 103 Tennessee, 625, 635.

Doubtless the question of the validity of the act of 1901 is of importance, but it has been upheld by the highest judicial tribunal of the State of Tennessee as consistent with the state constitution, and it affects only the citizens of that State.

If we were to hold that the act could be subjected to the test of the Fourteenth Amendment and that it could not stand that

test, we should do nothing more than reverse the decree below and remand the cause, and as such a judgment would be inef-fectual, we must decline to intimate any opinion on the subject.

"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." Mr. Justice Gray, *Mills* v. *Green,* 159 U. S. 651, 653.

We think this writ of error comes within the rule thus declared, and it is therefore

*Dismissed without costs to either party.*