SOUTHERN PAC. CO. v. ESHELMAN et al.

(District Court, N. D. California, Second Division. May 26, 1914.)

No. 29.

1. DISMISSAL AND NONSUIT ⚙═65—ELIMINATION OF ACTUAL CONTROVERSY.

   Where, pending a suit by a railroad company to restrain threatened action by a state Railroad Commission which would prevent complainant from creating an indebtedness for new equipment, complainant applied for and obtained from the Commission an order authorizing such indebtedness, thus eliminating any real or substantial controversy in respect to

⚙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the subject-matter of the suit, the court will not retain the case for the purpose of determining questions of law which the parties unite in desiring to have decided.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. § 160; Dec. Dig. ☞65.]

2. ACTION ☞6—ESSENTIALS OF JURISDICTION—ACTUAL CONTROVERSY.

To invoke the jurisdiction of a court, it is primarily essential that there be involved a genuine and existing controversy, calling for present adjudication as involving present rights, and although a case may have originally presented such a controversy, if before decision it has, through the act of the parties or other cause, lost that essential character, it is the duty of the court, on the fact appearing, to dismiss it.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 40; Dec. Dig. ☞6.]

In Equity. Suit by the Southern Pacific Company against John M. Eshelman and others, constituting the Railroad Commission of California, and others. Bill dismissed.

Wm. F. Herrin, Guy V. Shoup, C. W. Durbrow, Henley C. Booth, and Jared How, all of San Francisco, Cal., for plaintiff.

Max Thelen and Douglas Brookman, both of San Francisco, Cal., for defendants.

VAN FLEET, District Judge. This is a bill seeking to restrain the Railroad Commission of the state, its attorney, and certain other officers charged with the enforcement of the Public Utilities Act of the state (St. Cal. 1911 [Ex. Sess.] p. 18), approved December 23, 1911, from asserting the right to enforce, as against plaintiff, a nonresident corporation engaged as a common carrier by railroad in local and interstate commerce in this and various other states, the provisions of that act in certain respects. Stated in a brief and very general way, the particular transaction counted upon as giving rise to the controversy relates to a proposed contract of guaranty by plaintiff of an issue of equipment trust certificates under a trust agreement, which it is alleged plaintiff finds it necessary, for want of ready funds, to make to enable it to secure equipment in the way of locomotives, cars, etc., essential for the efficient carrying on of its business as such common carrier—it being alleged that notwithstanding all proceedings for such proposed issue and all contracts relating thereto will be had and executed in New York, where the certificates will be issued and the interest made payable, that none of the parties to the contemplated agreement are residents of California, and that the equipment to be secured thereby will be delivered to plaintiff outside this state and largely used in interstate commerce, the said Railroad Commission claims that the provisions of the said Public Utilities Act apply thereto, and that unless such issue of certificates is had in accordance with its provisions and with the sanction of said Commission such certificates will be wholly void, and the plaintiff and its officers liable to certain severe penalties and criminal prosecutions provided in the act for its violation, and which it is alleged defendants will seek to visit upon plaintiff, its officers, and agents; that this attitude on the part of the

Railroad Commission and its members has caused the refusal of the parties with whom plaintiff was negotiating to enter into the proposed trust agreement, and has made it impossible for plaintiff to secure such necessary equipment, except by complying with the demands of such Commission; that this assertion of authority by the defendants thereby affects, not only the business of plaintiff in this state, but the business of its entire system in and through the other states traversed thereby; and finally it is alleged that the attitude of defendants in the premises is wholly unsanctioned by law and operates as a direct interference with and burden upon interstate commerce, and impedes and impairs plaintiff's ability to conduct its business as such common carrier, to its great loss and that of the public, and to its irreparable damage, in a manner in contravention of the Constitution and laws of the United States, wherefore it seeks the relief prayed.

[1] The defendants have submitted a motion to dismiss the bill upon several grounds, but in view of the effect ascribed to the facts about to be noticed the court deems itself precluded from looking into the merits of the motion, and as called upon to dismiss the bill from other considerations. It appears that since the bill was filed here the plaintiff voluntarily filed with the defendant Railroad Commission its petition, asking an order authorizing it to guarantee $2,010,000 car equipment trust certificates, which it is not questioned are the identical trust certificates which constitute the subject-matter of the bill; that a hearing was had on this petition, and that the Commission subsequently made its order granting the application in full as asked, thereby enabling the plaintiff to negotiate and guarantee the issue of certificates for equipment required for the use set forth in its bill. I am of opinion that the proceedings thus had before the Commission have resulted in eliminating any real or substantial controversy that may have theretofore existed between the parties growing out of the facts stated in the bill; that the action has thereby become moot, and the questions sought to be litigated, so far as any present rights of the parties are concerned, are rendered purely abstract and academic.

It is suggested that these proceedings before the Railroad Commission did not wholly dispose of the matter in controversy, the intimation being that their order did not in terms cover the entire equipment referred to in the bill; and both parties request the court, notwithstanding those proceedings, to render a decision on the merits of the question raised by the motion to dismiss, although disagreeing radically as to what that question is. On the part of the railroad company the request is for a decision on the question whether the Railroad Commission has jurisdiction over the car equipment trust certificates referred to in the bill, and they say:

"We join in the request of the Commission that a decision be rendered upon the motion to dismiss the bill, regardless of the order entered by the Railroad Commission, for the reason that, while the Commission has, in its order, expressed the opinion that it has not jurisdiction over the acquisition of interstate equipment, such opinion is not necessarily controlling upon the federal courts, and might not be accepted by bankers' counsel as authoritative or final. Moreover, the Arizona Corporation Commission, which has powers

similar to those vested in the California Railroad Commission, has not disclaimed jurisdiction as to such equipment, and its approval is as essential to the validity of the trust certificates, if such approval is necessary, as that of the California Commission. Moreover, it will be necessary for the Southern Pacific Company to acquire a great deal of additional equipment from time to time, both for interstate and intrastate purposes, and it is to the interest of the public, as well as important to the Southern Pacific Company, that the question as to the jurisdiction of state railroad commissions in matters of this kind should be judicially settled."

On the other hand, it is stated by the defendant Commission:

"We have asked that the court write a decision on the motion, 'so that it may be definitely determined in the federal courts in this district that injunctions will not issue in cases such as this one.' This request did not mean that we asked for a decision on the question whether the California Commission has jurisdiction over the car equipment trust certificates referred to in the bill. We have consistently taken the position that this question is not before this court in this proceeding. What we did have reference to in inserting the above quotation in our brief was that we were anxious that this court should definitely decide the question whether or not a public utility can go before a federal court and secure an injunction against the enforcement by the state of California of the criminal provisions of a valid state statute. The question is of great importance to us, for the reason that we are naturally desirous that, if our position is correct, the time of the Commission be not further taken up by similar actions to block our enforcement of penal provisions of the Public Utilities Act."

It will thus be seen that the parties are not in harmony as to the question which they regard respectively as still remaining for decision. But this divergence of view is not material, since the claim that any material feature of, the controversy between the parties remains is not well founded. It is obvious that the suggestion that the order of the Commission did not authorize an issue of trust certificates covering the equipment sought by plaintiff is based upon a misconception of the averments of the bill. The only statement in the bill as to the amount involved in the proposed expenditure by plaintiff is that:

"It will be necessary for plaintiff to acquire additional rolling stock and equipment costing more than a million dollars."

As the order of the Commission authorized an issue of more than twice the amount thus stated, and included equipment for use on both interstate and intrastate roads, the court, being concluded by the case made by the bill, must assume that the order covered all that was contemplated by the averments there made. This being so, neither the desire of the parties, however insistent, nor their express consent, can operate to retain life in a controversy which through their own action has become moribund, nor confer upon the court jurisdiction to render a decision "upon the merits" in such a case. As said by the court in Little v. Bowers, 134 U. S. 547, 10 Sup. Ct. 620, 33 L. Ed. 1016:

"If. as is contended on behalf of the plaintiff in error, the question involved in this case is one of great importance to the railroad company and to the state, and is identical with that in a number of other cases pending in the court below, so much the more important is it that it should not be decided in a case where there is nothing in dispute. Nor is it material that the case was selected by the plaintiff in error and agreed to by the defendant in error, before the writ of error was prosecuted, as one in which the question of taxa-

tion under the New Jersey statutes could be fully considered and finally decided by this court; for it is well understood that consent does not confer jurisdiction."

And again in California v. San Pablo, etc., R. R. Co., 149 U. S. 308, 13 Sup. Ct. 876, 37 L. Ed. 747, in discussing the power of the court in such cases, it is said:

"No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard."

[2] However convenient or desirable for either party that the questions mooted in the case be authoritatively settled for future guidance, the court is not justified in violating fundamental principles of judicial procedure to gratify that desire. To invoke the jurisdiction of a court of justice, it is primarily essential that there be involved a genuine and existing controversy, calling for present adjudication as involving present rights, and although a case may have originally presented such a controversy, if before decision it has, through act of the parties or other cause, lost that essential character, it is the duty of the court, upon the fact appearing, to dismiss it. Mills v. Green, 159 U. S. 651, 653, 16 Sup. Ct. 132, 40 L. Ed. 293; Kimball v. Kimball, 174 U. S. 158, 163, 19 Sup. Ct. 639, 43 L. Ed. 932; Jones v. Montague, 194 U. S. 147, 24 Sup. Ct. 611, 48 L. Ed. 913; Lloyd v. Dollison, 194 U. S. 445, 450, 24 Sup. Ct. 703, 48 L. Ed. 1062; Florida v. Georgia, 17 How. 478, 497, 15 L. Ed. 181; Security Life Ins. Co. v. Prewitt, 200 U. S. 446, 26 Sup. Ct. 314, 50 L. Ed. 545; California v. San Pablo, etc., R. R. Co., supra; Tennessee v. Condon, 189 U. S. 64, 23 Sup. Ct. 579, 47 L. Ed. 709; Little v. Bowers, supra.

The principles finding expression in these cases have been thus aptly epitomized and stated in 2 Encyc. Sup. Ct. Rep. 289, where, referring to the rule uniformly followed by the Supreme Court, it is said:

"It has been the universal practice of this court to dismiss the case whenever it becomes apparent that there is no real dispute remaining between the plaintiff and the defendant, or that the case has been settled or otherwise disposed of by agreement of the parties, and there is no actual controversy pending. In other words, whenever it appears, or is made to appear, that there is no actual controversy between the litigants, or that, if it once existed, it has ceased, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and when no relief can be afforded. On'y real controversies and existing rights are entitled to invoke the exercise of their powers."

The case of S. P. Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310, referred to by plaintiff, is not apposite, as tending to show the inapplicability of the principles above stated to the present case. There the Interstate Commerce Commission had made an order, limited as to time, requiring the Terminal Company to desist from giving the preference complained of. The time limit of the order expired pending the appeal, and a motion to dismiss was made upon the ground that the case had

thereby become moot; but it was held that, as the Commission had power to immediately renew its order, the mere expiration of the particular order involved did not have the effect of settling the controversy, and the cause could not, therefore, be justly said to have lost its vitality as presenting no living issue. The court, after referring to certain of the cases above cited, say:

"But in those cases the acts sought to be enjoined had been completely executed, and there was nothing that the judgment of the court, if the suits had been entertained, could have affected. The case at bar comes within the rule announced in United States v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 308 [17 Sup. Ct. 540, 41 L. Ed. 1007], and Boise City Irr. & Land Co. v. Clark (C. C. A. 9th Cir.) 131 Fed. 415 [65 C. C. A. 399]. In the case at bar the order of the Commission may to some extent (the exact extent it is unnecessary to define) be the basis of further proceedings. But there is a broader consideration. The questions involved in the orders of the Interstate Commerce Commission are · usually continuing (as are manifestly those in the case at bar), and their consideration ought not to be, as they might be, defeated by short term orders, capable of repetition, yet evading review, and at one time the government and at another time the carriers have their rights determined by the Commission without a chance of redress."

In this case, as we have seen, the order of the Railroad Commission has disposed completely of the subject-matter involved in the immediate controversy, and the case therefore falls clearly within the category of those which have heretofore uniformly been held to have become moot.

These considerations require a dismissal of the bill, and an order may be entered to that effect.