**UNITED CORPORATION et al. v. FEDER-AL TRADE COMMISSION.**

No. 4547.

Circuit Court of Appeals, Fourth Circuit.

March 11, 1940.

George F. Shea, of Washington, D. C. (Martin F. O'Donoghue and Thomas X. Dunn, both of Washington, D. C., on the brief), for petitioners.

Martin A. Morrison, Asst. Chief Counsel, Federal Trade Commission, of Washington, D. C. (W. T. Kelley, Chief Counsel, and Edward L. Smith and James W. Nichol, Sp. Attys., Federal Trade Commission, all of Washington, D. C., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is a petition to review and set aside an order of the Federal Trade Commission requiring petitioner, United Corporation, to

cease and desist .from representing orally or by other means that the corned beef hash and deviled ham which it sells are made from products originating in Virginia, from using the trade name "Virginia Products Company", from using labels containing the word "Virginia", and from invoicing its sales from Richmond or other place within the State of Virginia. As we are of opinion that the Commission was without jurisdiction to enter the order, we shall confine our discussion to that phase of the case.

Petitioner is a Virginia corporation engaged in the marketing of canned meat products including corned beef hash and deviled ham, which are packed for it by two licensed packers, Montell, Inc., of Cambridge, Md. and Emmart Food Products Co. of Chicago, Ill. The meats used in these products, except in the case of the deviled ham packed by Montell, Inc., are not obtained from cattle or hogs grown in Virginia; but the labels containing the word "Virginia" have been approved by the Secretary of Agriculture under the Meat Inspection Act, 21 U.S.C.A. § 75. Petitioner owns 20% of the capital stock of Montell, Inc., and of Emmart Food Products Co., and owned same at the time of the entry of the order by the Commission. Prior to the entry of the order, it had moved for the dismissal of the proceedings on the ground that it was a "packer" within the meaning of the Packers and Stockyards Act of 1921, 7 U.S.C.A. § 191, and hence was not within the jurisdiction of the Commission.

The Commission, while virtually conceding that petitioner at the time of the entry of its order came within the definition of a packer as contained in the Packers and Stockyards Act, contends that it had jurisdiction because petitioner had not acquired that status at the time of the filing of the petition before it. The facts as to this are that the petition was filed March 31, 1937. Petitioner acquired 20% of the stock of Montell, Inc., April 12, 1937 and 20% of the stock of Emmart Food Products Co. May 1, 1937. The order was not entered until August 2, 1939. As early as 1936 petitioner had entered into a contract entitling it to a one-fifth interest in the business of Montell, which was then operating as a partnership.

There can be no question but that upon the acquisition of the stock of Mon-

tell, Inc., and the Emmart Food Products Co., petitioner became a packer whose business was subject to the control of the Secretary of Agriculture under the Packers and Stockyards Act. It was engaged in the marketing of meat food products and it owned and controlled an interest in two corporations engaged in the business of "manufacturing or preparing meats or meat food products for sale or shipment in commerce." 7 U.S.C.A. § 191.

And we think it equally clear that, as a packer subject to the jurisdiction of the Secretary of Agriculture under the Packers and Stockyards Act, petitioner was excepted from the jurisdiction of the Federal Trade Commission. Sec. 406(b) of that Act, 42 Stat. 169, 7 U.S.C.A. § 227, provides: "(b) On and after the enactment of this Act, and so long as it remains in effect, the Federal Trade Commission shall have no power or jurisdiction so far as relating to any matter which by this Act is made subject to the jurisdiction of the Secretary, except in cases in which, before the enactment of this Act, complaint has been served under section 5 of the Act entitled 'An Act to create a Federal Trade Commission, to define its power and duties, and for other purposes,' approved September 26, 1914, * * * and except when the Secretary of Agriculture, in the exercise of his duties hereunder, shall request of the said Federal Trade Commission that it make investigations and report in any case."

The exceptions to the general clause excluding jurisdiction by the Trade Commission manifestly do not preserve the jurisdiction of the Commission in this case, for the reason that the complaint herein had not been served at the time of the passage of the Act, which was August 15, 1921, and no investigation and report has been requested of the Commission by the Secretary of Agriculture. And, on the other hand, there can be no question but that the general clause excluding jurisdiction by the Commission applies to unfair practices in the marketing of meat food products by a packer, since this was a matter made subject to the jurisdiction of the Secretary of Agriculture by Secs. 202 and 203 of the Act, 42 Stat. 161, 7 U.S. C.A. §§ 192 and 193. Sec. 202 provides that it shall be unlawful for any packer to engage in or use any "unfair, unjustly discriminatory, or deceptive practice or device in commerce." And Sec. 203 vests

in the Secretary of Agriculture jurisdiction to deal with violations of Sec. 202 and to require a packer to cease and desist therefrom.

Any doubt as to the correctness of this conclusion is removed if consideration be given to Sec. 5 of the Trade Commission Act, as amended by the Act of March 21, 1938, 52 Stat. 111, 15 U.S.C.A. § 45. That section as so amended provides:

"Sec. 5. (a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

"The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, common carriers subject to the Acts to regulate commerce, *and persons, partnerships, or corporations subject to the Packers and Stockyards Act, 1921,* except as provided in section 406(b) of said Act, from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." (Italics supplied.)

Section 203 of the Packers and Stockyards Act together with the provisions of the Meat Inspection Act of March 4, 1907, 34 Stat. 1262, 21 U.S.C.A. § 75, undoubtedly vest the Secretary of Agriculture with plenary power to regulate the branding and labeling of meat food products and to forbid unfair trade practices in the sale thereof. The Secretary has promulgated elaborate regulations with respect to the branding and labeling of such products, in which the use of deceptive labels is forbidden and the use of geographical names regulated. Regulations of 1922, Sec. 7, paragraphs 1 and 2(b), are as follows:

"Section 7. Paragraph 1. No meat or product, and no container thereof, shall be labeled with any false or deceptive name; but established trade names which are usual to such articles and are not false or deceptive and which have been approved by the Secretary of Agriculture may be used.

"Paragraph 2. No statement, word, picture, design, or device which conveys any false impression or gives any false indication of origin or quality shall appear on any label. For example:

\* \* \* \* \*

"(b) Names of countries, States, and Territories, and such other geographical names as the department may approve, may be used on labels, only when followed by the word 'style', 'type', 'cut', or 'brand', in the same size and style of lettering as the geographical name, unless the products for which the labels are intended are prepared in the localities named: \* \* \*".

The Supreme Court has sustained this exercise of power on the part of the Secretary of Agriculture and has held that exclusive power has been delegated to him by Congress with respect thereto. Brougham v. Blanton Mfg. Co., 249 U.S. 495, 39 S.Ct. 363, 365, 63 L.Ed. 725. The Court said in that case: "The test of the product is the meat inspection laws, not the trade-mark laws, and therefore we are concerned with the action of the Department of Agriculture and not with that of the Interior Department. And so intimately is the case concerned with the action of the Department of Agriculture that the basic and dominant contention of the government is that to the department is committed the power of determining the fact of the influence of the name and label of the company. In other words, the power of determining whether a trade-name is 'false or deceptive' given by the law to the Secretary of Agriculture is, when exercised, conclusive of the falsity or deception of the name (Bates & Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894, and cases cited; Fertilizing Co. v. Hyde Park, 97 U.S. 659, 24 L.Ed. 1036), and the power necessarily is a continuing one. The contention and the cited cases have been approved very lately in Houston v. St. Louis Independent Packing Co. [ante], 249 U.S. 479, 39 S.Ct. 332, 63 L.Ed. 717, in which it is declared that the decision of the department, unless arbitrary, is conclusive."

It was doubtless because plenary power over the unfair trade practices of packers had been vested in the Secretary of Agriculture by the Packers and Stockyards Act and the Meat Inspection Act, that Congress withheld jurisdiction over packers from the Federal Trade Commission. Only confusion could result from an overlapping jurisdiction, as this case well illustrates.

And since the power of the Federal Trade Commission is purely regulatory and not punitive, it is clear that jurisdiction must exist at the time of the entry of its order. Jurisdiction at the time of the commission of acts objected to as unfair trade practices or at the time of the filing of the complaint with regard thereto is not sufficient; for the order to be entered does not relate to past practices or determine rights

as of the time of the filing of the complaint, as in an action at law, but commands or forbids action in the future. The Commission cites a number of cases holding that the jurisdiction of a court attaches upon the filing of the complaint and that subsequent changes cannot confer or divest jurisdiction; but these cases, we think, have no bearing upon the question here involved and furnish no analogy to be applied in the case of a regulatory commission whose orders operate in futuro. An analogy is furnished, however, by the rule prevailing in equity to the effect that the court, in making its decree, is governed by the situation existing at the time the decree is entered, and not by that which existed at the inception of the litigation. 10 R.C.L. 559; 21 C. J. 664; Stonega Coke & Coal Co. v. Price, 4 Cir., 106 F.2d 411, 419; Randel v. Brown 2 How. 406, 11 L.Ed. 318. And relief will not be afforded in equity when during the pendency of the suit, even on appeal, an event occurs making it impossible to grant effective relief. Tennessee v. Condon 189 U.S. 64, 23 S.Ct. 579, 47 L.Ed. 709; Mills v. Green 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293. When petitioner here, by acquiring stock in Montell, Inc., and Emmart Food Products Co., became a packer within the meaning of the Packers and Stockyards Act and subject to the jurisdiction of the Secretary of Agriculture, the Trade Commission had no further power of regulation over it; and the fact that the Commission may have been considering regulation under a complaint theretofore filed is immaterial.

A case directly in point is Chamber of Commerce v. Federal Trade Commission, 8 Cir., 13 F.2d 673, 685. It appeared in that case that, while a proceeding against the Minneapolis Chamber of Commerce was pending before the Trade Commission, Congress passed the Grain Futures Act, 7 U.S.C.A. § 1 et seq., regulating a number of matters involved in the proceeding. In holding that as to these matters the Commission ceased to have jurisdiction, notwithstanding that the proceeding had been filed before the passage of the Grain Futures Act, the Court said: "The above act was passed after this complaint was filed but before the order was made herein. As the orders of the Commission are purely remedial and preventative, the effect thereof is entirely in the future. Therefore, the jurisdiction of the Commission should, in this respect, be measured as of the time of the order rather than as of the filing of the complaint or as of the hearing thereon."

In the very recent case of Federal Communications Commission v. Pottsville Broadcasting Co., 60 S.Ct. 437, 84 L.Ed. ——, the Supreme Court held that it was error for the United States Court of Appeals. for the District of Columbia, in remanding a cause to the Federal Communications Commission, to require that it make its decision on the record theretofore made before it, saying that, after the Commission had corrected the error pointed out by the Court of Appeals, its responsibility was to enforce the legislative policy committed to its charge, that the practice followed in courts was not controlling and that, after remand, the Commission was again charged with the duty of judging the application before it in the light of "public convenience, interest and necessity." This, of course, is entirely inconsistent with any idea that the power of the Commission is to be determined as of the date of the filing of the complaint before it.

If the jurisdiction of the Commission over the petitioner should be determined as of the date of the filing of the complaint, interesting questions would arise as to whether petitioner did not then own a sufficient interest in the Montell partnership to bring it within the Packers and Stockyards Act, and, if not, whether the regulatory power of the Commission could be exercised to prevent the sale by petitioner of meat food products which had been packed by a duly licensed packer and bore labels approved by the Secretary of Agriculture under the Meat Inspection Act. If it was lawful, as there can be no doubt it was, for Montell, Inc., and Emmart Food Products Co. to sell under these labels, it is rather difficult to see how the sale by petitioner of products which he had purchased from these packers under such labels could be held an unfair trade practice. We need not decide these questions, however, as we are of opinion, for the reasons stated, that the jurisdiction of the Commission over petitioner must be judged as of the date of its order, and that at that time it had no jurisdiction, since prior thereto petitioner had become a packer within the meaning of the Packers and Stockyards Act and its business had become subject to the exclusive regulation of the Secretary of Agriculture.

We are not to be taken as in any sense approving the position of petitioner

on the merits. The practice of using brands in such way as to create a false impression as to the origin of merchandise is one which, in our opinion, cannot be defended. El Moro Cigar Co. v. Federal Trade Commission, 4 Cir., 107 F.2d 429; Federal Trade Com'n v. Walker's New River Mining Co., 4 Cir., 79 F.2d 457. The power to regulate the business of packers, however, rests with the Secretary of Agriculture, not with the Trade Commission or with the courts.

For the reasons stated, the order of the Federal Trade Commission will be set aside for lack of jurisdiction over the business of petitioner.

Reversed and order set aside for lack of jurisdiction.