## P. LORILLARD CO. v. FEDERAL TRADE COMMISSION.

### No. 6140.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 14, 1950.

Decided Dec. 29, 1950.

L. P. McLendon, Greensboro, N. C. (G. Neil Daniels, Greensboro, N. C., F. J. Daniels and T. L. Perkins, New York City, on brief), for petitioner.

Joseph S. Wright, Asst. General Counsel, Federal Trade Commission, Washington, D. C. (W. T. Kelley, General Counsel; James W. Cassedy, Asst. General Counsel; John W. Carter, Jr., John R. Phillips, Jr., and A. B. Hobbes, Attorneys, Federal Trade Commission, all of Washington, D. C., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to set aside an order of the Federal Trade Commission which directed that the P. Lorillard Company cease and desist from making certain representations found to be false in the advertising of its tobacco products. The Commission has filed answer asking that its order be enforced. The company was ordered to cease and desist "from representing by any means directly or indirectly:

"(1) That Beech-Nut cigarettes, or any other cigarette composed of substantially the same blend of tobaccos, or the smoke therefrom, will not harm or irritate the throat, or will provide any defense against throat irritation; or that the extra length of Beech-Nut cigarettes, or of any cigarette of substantially the same length, will filter out or eliminate the harmful properties in the smoke from such cigarettes or will cause the smoke from such cigarettes to be cooler than the smoke from cigarettes of standard length; provided, however, that nothing herein shall be construed to prohibit the respondent from representing that during the time the extra length of any such cigarette is being smoked the smoke therefrom will contain less irritating properties and will be cooler than the smoke from standard length cigarettes;

"(2) That Sensation cigarettes, or any other cigarette composed of substantially the same blend of tobaccos, are made of extra-choice imported and domestic tobaccos, or are top quality cigarettes, or are made from the finest tobacco that can be bought;

"(3) That Old Gold cigarettes or the smoke therefrom contains less nicotine, or less tars and resins, or is less irritating to the throat than the cigarettes or the smoke therefrom of any of the six other leading brands of cigarettes; or

"(4) That Friends smoking tobacco, or any other smoking tobacco manufactured in substantially the same manner, is rum-cured, or that the process by which a rum flavoring is added to such tobacco enriches the tobacco or causes the smoke therefrom to be any less irritating to the throat or any cooler than if such rum flavoring were not added; or that the smoke from Friends smoking tobacco, or from any other smoking tobacco composed of substantially the same blend of tobaccos, will not irritate the mouth or throat of a smoker, or is cool, or is free from bite, burn, or harshness."

The company does not contend that the falsity of the representations referred to in paragraphs (1), (2) and (4) of the above order was not established by substantial evidence but does make that contention with respect to its advertising of Old Gold

cigarettes referred to in paragraph (3). It contends, also, that the Commission was without power to make the order because of alleged procedural irregularities and that the order exceeds the authority and jurisdiction of the Commission and is fatally vague and ambiguous in its terms. Three questions are presented for our consideration: (1) whether the Commission was without power to enter the order complained of because of the alleged procedural irregularities; (2) whether paragraph three of the order relating to Old Gold cigarettes is supported by substantial evidence; and (3) whether the order exceeds the power of the Commission or is otherwise invalid.

### 1. The Procedural Questions.

The principal procedural question raised by the company is whether the Commission, after approving a fact stipulation, could rescind its order to that effect and direct the taking of testimony in the case. The facts are that after the proceeding was instituted, counsel for the company and the Commission agreed upon a stipulation as to the facts with respect to most of the questions presented but provided for the taking of testimony as to two of them. The Commission approved the stipulation and set the case down for hearing. It later discovered that facts in the case which it regarded as highly important had not been stipulated, viz., facts relating to the nicotine, tar and resin content of Old Gold cigarettes as compared with other leading brands of cigarettes. Upon the refusal of the company to agree to an amendment of the stipulation so as to cover this matter, counsel for the Commission moved that it withdraw its approval of the stipulation. This motion was allowed and the order of approval was rescinded and the case was reopened for the taking of additional testimony. The company made a motion to strike this order from the record which the Commission denied, setting forth at length its reasons for the action taken as follows:

"In approving these stipulations, the Commission acted under the erroneous impression, not in any way due to respondent, that with the exception of the two charges mentioned the stipulation covered all other

material issues raised by the complaint. When, however, the matter came on for final consideration and the preparation by the Commission of its findings as to the facts and order to cease and desist, it was found that the facts stipulated afforded no basis for findings as to the facts and order to cease and desist with respect to charges in the complaint that Old Gold cigarettes contain tobaccos other than 'prize crop' tobaccos, that the tobaccos in Old Golds are not the finest money can buy, and that of the so-called seven leading brands of cigarettes Old Golds are not lowest in nicotine content or in throat-irritating tars and resins.

"At the time of the issuance of the complaint the Commission had reason to believe that these charges were well founded, and there had been no intervening cause for any change in this belief. The Commission was further of the opinion that the charge concerning nicotine, tar, and resin content as set out in subparagraph (f) of paragraph four and controverted in subparagraph (8) of paragraph nine of the complaint, from the standpoint of the public interest, was perhaps the most important charge in the complaint.

"In these circumstances, at the direction of the Commission that appropriate action be taken to provide for determination of these issues upon their merits, the Chief Counsel on March 17, 1945, filed a motion to withdraw approval of the stipulations and reopen the case. Thereafter, pursuant to a rule to show cause, hearing was had upon this motion, and on June 2, 1945, the Commission entered an order rescinding approval of the stipulations and reopening the case for the taking of testimony in support of and in opposition to the allegations of the complaint.

"From time to time in proceedings before the Commission, after entering into stipulations as to the facts with the Commission or filing admission answers to complaints, respondents have requested that the stipulations be set aside or asked leave to withdraw the admission answers. The grounds for such requests have been various and have included matters such as mistake, failure to appreciate the significance of the act, misunderstanding, and others. It has been, and is, the policy of the Commission to grant such requests and thereafter proceed to a determination of the issues upon such facts as may be established in the course of the trial of the case.

"The Commission having fully considered the present matter, including the mistake of fact which resulted in approval of the stipulations, and being of the opinion that there is no warrant for an abandonment of the aforesaid charges, which would result from granting respondent's motion, that the public interest will be best served, and that the rights of respondent will be protected by an adjudication based upon a record established in the trial of the issues; * * *."

■ Little need be added to what the Commission itself has said with respect to the reopening of the case. Fact stipulations approved by the Commission certainly have no greater sanctity than pretrial stipulations approved by a judge; and no one would contend that a judge could not relieve against fact stipulations upon such a finding as was made by the Commission here. Fed. Rules Civ. Proc. rule 16, 28 U. S.C.A. It must not be forgotton that the Commission is not a private party, but a body charged with the protection of the public interest; and it is unthinkable that the public interest should be allowed to suffer as a result of inadvertence or mistake on the part of the Commission or its counsel where this can be avoided. As said by this court in National Labor Relations Board v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, 55:

"An administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action to that end because of mistaken action on its part in the past. Cf. Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 145, 60 S.Ct. 437, 84 L.Ed. 656; Houghton v. Payne, 194 U.S. 88, 100, 24 S.Ct. 590, 48 L.Ed. 888. Nor can the principles of equitable estoppel be applied to deprive the public of the protection of a statute because of mistaken action or lack of action on the part of public officials. United States v.

City & County of San Francisco, 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050; Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; United States v. City of Greenville, 4 Cir., 118 F.2d 963, 966."

See also McComb v. Homeworkers' Handicraft Corp., 4 Cir., 176 F.2d 633, 640, 641, and Wallace Corporation v. National Labor Relations Board, 4 Cir., 141 F.2d 87, 91. The case last cited is very much in point. In that case we said with regard to action by the National Labor Relations Board:

"Settlements approved by the Board should ordinarily be observed and administrative orders should not be lightly disregarded (Cf. Matter of Simplicity Pattern Co., 16 N.L.R.B. 291); but these are guides for the exercise of discretion by the Board, not limitations upon its power. It is the duty of the Board to prevent unfair labor practices; and the fact that it may have certified a union as a bargaining representative does not limit its power later to declare such union to be company dominated and order its disestablishment, if such course is seen to be proper in the light of subsequent developments."

If the Commission had sustained the objection to the reopening of the case, there was nothing in law or in reason to prevent its directing that another case be instituted to deal with the advertising of Old Gold cigarettes; and it certainly could furnish no ground of complaint that the matter was dealt with in a pending case rather than in a separate one, which would properly have been consolidated with the pending case had it been instituted.

▮ The company complains, also, because the hearing of evidence was had before a different trial examiner from the one before whom the fact stipulations had been filed. There is nothing in this. The fact stipulations were excluded from further consideration when the case was reopened and the report was made by the examiner who presided at the hearings at which the evidence was taken and who saw and heard the witnesses. See N.L.R.B. v. Dixie Shirt Co., 4 Cir., 176 F.2d 969, 971, and cases there cited.

## 2. The Question of Substantial Evidence.

▮ While the company questions the scope of the order as embodied in paragraphs (1), (2) and (4), a matter which we shall discuss later, no question is raised as to the sufficiency of the evidence to support the findings upon which those paragraphs are based to the effect that the company had engaged in advertising as therein indicated which was false and misleading. Its argument as to the sufficiency of the evidence relates to the advertising of its Old Gold cigarettes. With respect to this, the Commission found that the company had advertised that these cigarettes and the smoke therefrom contain less nicotine than any of the six other leading brands of cigarettes and that the smoke contains less tars and resins and is less irritating to the throat than cigarettes of the other leading brands, and that the advertising was false, misleading and deceptive. The evidence amply supports this finding.

Laboratory tests introduced in evidence show that the difference in content of nicotine, tars and resins of the different leading brands of cigarettes is insignificant in amount; and there is abundant testimony of medical experts that such difference as there is could result in no difference in the physiological effect upon the smoker. There is expert evidence, also, that the slight difference in the nicotine, tar and resin content of cigarettes is not constant between different brands, but varies from place to place and from time to time, and that it is a practical impossibility for the manufacturer of cigarettes to determine or to remove or substantially reduce such content or to maintain constancy of such content in the finished cigarette. This testimony gives ample support to the Commission's findings.

▮ The company introduced no evidence in the case but asks that we disregard the testimony of the expert witness who testified to the impossibility of determining, removing or substantially reducing the nicotine, tar or resin content of cigarettes, on the ground that he had had no experience in the manufacturing or blending of tobacco. The record shows, however, that this witness, Dr. McMurtry, is a plant

physiologist with the U. S. Department of Agriculture in the Division of Tobacco Investigation and that he has been so employed since 1917. It would seem that his testimony with respect to a matter of this sort should have great weight; but, of course, the weight to be accorded it is a matter for the Commission, not for us, and the Commission believed it. Even if his testimony be disregarded, there remains the testimony of the experts to the effect that the difference in the nicotine, tar and resin content of cigarettes of the leading brands is insignificant and not sufficient to make any difference in the physiological effect upon the smoker. This of itself is sufficient to condemn the advertising as false and misleading, since it is intended to appeal to those who are interested in the physiological effect of the smoke of the cigarettes and who would be led by the advertising to believe that the smoke of the Old Gold cigarettes is less harmful to the smoker because containing appreciably less nicotine, tars and resins.

The company relies upon the truth of the advertisements complained of, saying that they merely state what had been truthfully stated in an article in the Reader's Digest. An examination of the advertisements, however, shows a perversion of the meaning of the Reader's Digest article which does little credit to the company's advertising department,—a perversion which results in the use of the truth in such a way as to cause the reader to believe the exact opposite of what was intended by the writer of the article. A comparison of the advertisements with the article makes this very plain. The article, after referring to laboratory tests that had been made on cigarettes of the leading brands, says:

"The laboratory's general conclusion will be sad news for the advertising copy writers, but good news for the smoker, who need no longer worry as to which cigarette can most effectively nail down his coffin. For one nail is just about as good as another. Says the laboratory report: 'The differences between brands are, practically speaking, small, and no single brand is so superior to its competitors as to justify its selection on the ground that it is less harmful.' How small the variations are may be seen from the data tabulated on page 7.''

The table referred to in the article was inserted for the express purpose of showing the insignificance of the difference in the nicotine and tar content of the smoke from the various brands of cigarettes. It appears therefrom that the Old Gold cigarettes examined in the test[1] contained less nicotine, tars and resins than the others examined, although the difference, according to the uncontradicted expert evidence, was so small as to be entirely insignificant and utterly without meaning so far as effect upon the smoker is concerned. The company proceeded to advertise this difference as though it had received a citation for public service instead of a castigation from the Reader's Digest. In the leading newspapers of the country and over the radio it advertised that the Reader's Digest had had experiments conducted and had found that Old Gold cigarettes were lowest in nicotine and lowest in irritating tars and resins, just as though a substantial difference in such content had been found. The following advertisement may be taken as typical:

"OLD GOLDS FOUND
LOWEST IN NICOTINE
OLD GOLDS FOUND
LOWEST IN THROAT-IRRITATING
TARS AND RESINS

"See Impartial Test by Reader's Digest July Issue.

"See How Your Brand Compares with Old Gold.

"Reader's Digest assigned a scientific testing laboratory to find out about cigarettes. They tested seven leading cigarettes and Reader's Digest published the results.

"The cigarette whose smoke was lowest in nicotine was Old Gold. The cigarette with the least throat-irritating tars and resins was Old Gold.

1. In some other tests of the same leading brands of cigarettes, evidence of which was produced before the Commission, Old Gold cigarettes were not the lowest in nicotine, tar or resin content.

"On both these major counts Old Gold was best among all seven cigarettes tested.

Get July Reader's Digest. Turn to Page 5. See what this highly respected magazine reports.

"You'll say, 'From now on, my cigarette is Old Gold.' Light one? Note the mild, *interesting* flavor. Easier on the throat? Sure: And *more* smoking pleasure: Yes, it's the *new* Old Gold—finer yet, since 'something new has been added'."

■ The fault with this advertising was not that it did not print all that the Reader's Digest article said, but that it printed a small part thereof in such a way as to create an entirely false and misleading impression, not only as to what was said in the article, but also as to the quality of the company's cigarettes. Almost anyone reading the advertisements or listening to the radio broadcasts would have gained the very definite impression that Old Gold cigarettes were less irritating to the throat and less harmful than other leading brands of cigarettes because they contained substantially less nicotine, tars and resins, and that the Reader's Digest had established this fact in impartial laboratory tests; and few would have troubled to look up the Reader's Digest to see what it really had said. The truth was exactly the opposite. There was no substantial difference in Old Gold cigarettes and the other leading brands with respect to their content of nicotine, tars and resins and this was what the Reader's Digest article plainly said. The table whose meaning the advertisements distorted for the purpose of misleading and deceiving the public was intended to prove that there was no practical difference and did prove it when properly understood. To tell less than the whole truth is a well known method of deception; and he who deceives by resorting to such method cannot excuse the deception by relying upon the truthfulness per se of the partial truth by which it has been accomplished.

■ In determining whether or not advertising is false or misleading within the meaning of the statute, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public. "The important criterion is the net impression which the advertisement is likely to make upon the general populace." Charles of the Ritz Dist. Corp. v. Federal Trade Comm., 2 Cir., 143 F.2d 676, 679-680. As was well said by Judge Coxe in Florence Manufacturing Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73, 75, with reference to the law relating to trademarks: "The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions." See also Federal Trade Comm. v. Standard Education Soc., 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; Stanley Laboratories v. F. T. C., 9 Cir., 138 F.2d 388; Aronberg v. F. T. C., 7 Cir., 132 F.2d 165; Ford Motor Co. v. F. T. C., 6 Cir., 120 F.2d 175. We think that the Commission's determination here was reasonable and amply supported by the evidence before it, and that its order forbidding the advertising as false and misleading was well within the limits of its discretion. Bristol-Myers Co. v. F. T. C., 4 Cir., 185 F.2d 58; General Motors Corp. v. F. T. C., 2 Cir., 114 F.2d 33, 36.

### 3. The Validity of the Order.

■ Little need be said as to the validity of the order. The company contends that paragraphs (1), (2) and (4) exceed the powers of the Commission because they apply, not merely to the advertising of the tobacco products named therein, but also to any other cigarettes composed of substantially the same blend of tobaccos as Beech Nut or Sensation cigarettes or to any other smoking tobacco manufactured in substantially the same manner as Friends smoking tobacco. We think that this contention is entirely without merit. Orders of the Commission have relation to the future, not to the past. American Chain & Cable Co. v. F. T. C., 4 Cir., 142 F.2d 909, 911; United Corp. v. F. T. C., 4 Cir., 110 F.2d 473, 475. And certainly it was proper in forbidding false advertising in the future, to make the order broad enough

to forbid false and misleading advertising of which the company had been guilty even though it might be made with respect to cigarettes and tobacco sold under a different name. The order ought not be so limited in scope that the company could evade it by merely changing the name of its products. The Commission is entitled to make its order broad enough to prevent evasion. Hershey Chocolate Corp. v. F. T. C., 3 Cir., 112 F.2d 968, 971–972; Hill v. F. T. C., 5 Cir., 124 F.2d 104, 106; N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 436–437, 61 S.Ct. 693, 700, 85 L.Ed. 930. As said in the case last cited, which dealt with a cease and desist order of the Labor Board:

"Having found the acts which constitute the unfair labor practice the Board is free to restrain the practice and other like or related unlawful acts. * * * The breadth of the order, like the injunction of a court, must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts which the Board has found to have been committed by the employer in the past."

It is argued that paragraph (3) of the order is void (1) because the advertising as to Old Gold cigarettes is not false, (2) because the comparison with the six other leading brands may be true sometime in the future, and (3) because the comparison in the advertising is restricted to the six other leading brands. The falsity of the advertising and its relation to the Reader's Digest article we have already sufficiently dealt with. As to the other objections, it is a sufficient answer to say that the order deals with the false advertising that was before the Commission; and the Commission properly framed its order to deal with the matter before it. If, in the future, advertising of the sort prohibited should become truthful because of a change in the character of the cigarettes to which it has reference, a very remote contingency, application can be made to the Commission for a revision of the order. It will be time enough to give consideration to that matter when the occasion for it arises.

As to the prohibited comparison being limited to the six leading brands, there is nothing in this of which the company can complain. It was with these six leading brands that the comparison was made in the false and misleading advertisements, and the Commission properly observed the limits which they set in itself defining the advertising which was prohibited.

For the reasons stated, the petition to set aside the order will be denied and the order will be enforced.

Petition denied and order enforced.