The FEDERAL TRADE COMMISSION
et al., Appellants,

v.

J. WEINGARTEN, INC., Appellee.

No. 20732.

United States Court of Appeals
Fifth Circuit.

Sept. 14, 1964.

Sherman L. Cohn, J. F. Bishop, Attys., Dept. of Justice, J. B. Truly, Asst. Gen. Counsel, Harold D. Rhynedance, Jr., Atty., F.T.C., Washington, D. C., for appellants.

Edward F. Howrey, Washington, D. C., Austin C. Wilson, Houston, Tex., Gilbert T. Adams, Beaumont, Tex., Leon Jaworski, of Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Harold F. Baker, Robert W. Steele, of Howrey, Simon, Baker & Murchison, Washington, D. C., for appellee.

Before BROWN, WISDOM and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The question here is whether the District Court sitting in Texas erred in enjoining proceedings taking place in

Washington, D. C. pursuant to a remand order of the Federal Trade Commission. This presents questions of jurisdiction and, assuming jurisdiction, whether an injunction was proper in light of the facts of this particular case.

Sometime in 1955, the Commission began an investigation relating, among other things, to a possible-violation by Weingarten of § 5 of the Federal Trade Commission Act.[1] The investigation culminated in the filing on January 5, 1960, of a complaint alleging that Weingarten had violated § 5 by the inducement or receipt of promotional allowances from suppliers which it knew were granted in violation of § 2(d) of the Clayton Act,[2] because the allowances had not been made available on proportionally equal terms to competitors of Weingarten selling the suppliers' products.[3] On the same day, the Commission instituted proceedings against eight suppliers who were alleged to have given the unlawful allowances to Weingarten.[4] After what all concede were the usual administrative prelimi-

1. 15 U.S.C.A. § 45. Subsection (a) (1), 15 U.S.C.A. § 45(a) (1) provides:

"Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."

2. 15 U.S.C.A. § 13(d) provides:

"It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

3. The complaint also charged a further violation of receiving the promotional allowances and converting them to its own use rather than expending them in advertising and promotion of the suppliers' goods. This charge was dismissed by the Hearing Examiner and Complaint Counsel did not appeal to the Commission. This matter is consequently no longer involved in the administrative proceedings.

4. Assigned to the same Hearing Examiner before whom the Weingarten complaint had been docketed, these supplier proceedings are in the following various stages of litigation before the Commission and the Courts:

| Supplier | FTC Docket Number | Status |
|---|---|---|
| Ipswich Hosiery Co. | 7715 | Did not seek review of cease and desist order. |
| Yakima Fruit & Cold Storage Co. | 7718 | Did not seek review of cease and desist order. |
| Vanity Fair Mills, Inc. | 7720 | Cease and desist order sustained by 2 Cir., 1962, 311 F.2d 480. |
| Shulton, Inc. | 7721 | Remanded for taking of evidence on § 2(b), defense 7 Cir., 1962, 305 F.2d 36. |
| Shreveport Macaroni Mfg. Co. | 7719 | Cease and desist order sustained by 5 Cir., 1963, 321 F.2d 404. |
| Max Factor & Co. | 7717 | Dismissed, 33 U.S.L. Week 2068, July 22, 1964. |
| Nestle-Le Mur Co. | 7716 | Administrative proceedings suspended awaiting outcome in *Factor* and *Shulton*. |
| Lanolin Plus, Inc. | 7722 | Administrative proceedings suspended awaiting outcome in *Factor* and *Shulton*. |

naries, hearings on the Weingarten complaint began on June 30, 1960.[5] After full hearings terminating in the spring of 1961, the parties filed briefs, proposed findings of fact and conclusions of law, and presented oral argument to the Hearing Examiner. On May 1, 1962, the Examiner issued his initial decision finding that the charge against Weingarten here involved had been established.[6] Weingarten gave notice on May 22 of its intention to appeal the initial decision to the Commission, and after extensions of time for filing briefs had been granted to both Weingarten and Complaint Counsel, the matter was submitted on oral argument on October 23, 1962. Five months later, on March 25, 1962, the Commission entered the order enjoined by the District Court which remanded the case for further, but limited, hearing before the Examiner.

The gist of the Commission's opinion and order of March 25 was that the initial decision could not stand because of certain defects in proof and certain procedural defects in the fact findings of the Examiner's initial decision.

The District Judge held that by virtue of the remand, the Commission had violated the command of § 6(a) of the Administrative Procedure Act[7] to "proceed with reasonable dispatch to conclude any matter presented to it." Consequently he enjoined the Commission and the Hearing Examiner from proceeding with the remand. He did not tell the Commission what disposition to make of the Weingarten complaint, but he did order that the Commission dispose of it on its own with no remand to an Examiner, and that it be finally disposed of within 30 days. Its motion for stay pending appeal having been denied, the Commission dismissed the complaint without prejudice to its being reopened in the event the litigation in this Court was concluded in its favor.

## I.

The Commission contends at the outset that the District Court was without jurisdiction to interfere with the orderly course of the administrative proceedings.[8] Urging that the statutory appeal to the Court of Appeals provided in § 5 (c)[9] of the Federal Trade Commission

5. Apparently this was the date on which the taking of testimony actually began. Preliminary proceedings starting on March 17, 1960, brought on an interlocutory appeal by Weingarten to the Commission on March 23, 1960. This appeal was disposed of by the Commission on September 9, 1960.

6. As we indicate, note 3, supra, another charge was dismissed by the Examiner and is not here involved.

7. 5 U.S.C.A. § 1005(a).

8. The Commission cites in this connection FTC v. Claire Furnace Co., 1927, 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978; Miles Laboratories v. FTC, 78 App.D.C. 326, 1944, 140 F.2d 683; McFadden Publications, Inc. v. FTC, 59 App.D.C. 192, 1930, 37 F.2d 822; Royal Baking Powder Co. v. FTC, 59 App.D.C. 70, 1929, 32 F.2d 966.

9. Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45, provides:
"(a) (1) Unfair methods of competition in commerce, and unfair or deceptive

acts or practices in commerce, are declared unlawful.
" * * *
"(c) Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States, within any circuit where the method of competition or the act or practice in question was used or where such person, partnership, or corporation resides or carries on business, by filing in the court, within sixty days from the date of the service of such order, a written petition praying that the order of the Commission be set aside. * * * Upon such filing of the petition the court shall have jurisdiction of the proceeding and of the question determined therein concurrently with the Commission until the filing of the record and shall have power to make and enter a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed and to issue such writs as are ancillary to its jurisdiction or are neces-

Act is exclusive,[10] the Commission asserts that it constitutes a plain, speedy, and adequate remedy at law which bars an injunction suit.[11] Weingarten, on the other hand, contends that the remedy provided by § 5(c) is inadequate to protect its right to a disposition with reasonable dispatch and that jurisdiction was properly invoked pursuant to decisions like Leedom v. Kyne, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; McCulloch v. Sociedad Nacional, 1963, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547; Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 489, 1962, 306 F.2d 260; and Deering Milliken, Inc. v. Johnston, 4 Cir., 1961, 295 F.2d 856.

Although we recognize that the grant of jurisdiction in Leedom-type cases is a narrow one, Boire v. Greyhound Corp., 1964, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849, 854, we think we should not express any opinion in this area of jurisdiction when it is not necessary to a disposition of the case. Assuming, without deciding, that the District Court had jurisdiction to enjoin the remand proceedings, we conclude that the order did not violate the command of § 6(a) to proceed with reasonable dispatch, nor were the proceedings otherwise defective as claimed. Consequently, the District Court erroneously enjoined the Commission and its staff from proceeding under it.

### II.

Weingarten builds its argument that § 6(a) has been violated by charging (1) that the Commission is guilty of unexcused delay in the disposition of the administrative proceedings and (2) that the remand was an attempt by a biased Commission to implement an arbitrary prejudgment that Weingarten had violated the Act.

With respect to delay, Weingarten's claim rests on the simple contention that as a matter of law the Commission is not proceeding with dispatch when a complaint pends for some 2 and ½ years before a Hearing Examiner and 11 months thereafter before the whole Commission. Absent proof of the normal time necessary to dispose of a similar proceeding or of facts tending to show a dilatory attitude on the part of the Commission or its staff—matters totally undeveloped on this record—we are unable to say that a Judge can so hold. So far as this record shows, this case not only proceeded at a rate comparable to that normally experienced in cases of its kind, it also proceeded at a rate satisfactory to Weingarten. This record is barren of any suggestion that Weingarten at any time between January 5, 1960, the date the complaint was filed, and March 25, 1963, the date the Commission entered its order of remand, ever complained about the pace of the proceedings. The record does reveal that extensions of time for filing briefs before the full Commission were granted to both Weingarten and Complaint Counsel, and doubtless other extensions at other stages were granted to both parties.

Of course the Supreme Court and all Courts in a supervisory role are concerned with delay. It has recently had occasion to deplore the "nigh interminable" delay in connection with some administrative agency proceedings. FPC v. Hunt, 1964, 376 U.S. 515, 84 S.Ct. 861, 11 L.Ed.2d 878, 886. And we are the first to emphasize that agencies must

---

sary in its judgment to prevent injury to the public or to competitors pendente lite. * * *.

"* * * *

"(d) Upon the filing of the record with it the jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive."

10. The Commission relies on Aircraft & Diesel Equipment Corp. v. Hirsch, 1947,

331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796; FPC v. Arkansas Power & Light, 1947, 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261; Far East Conference v. United States, 1952, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576.

11. FTC v. Claire Furnace Co., 1927, 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978; Royal Baking Powder Co. v. FTC, 59 App.D.C. 70, 1929, 32 F.2d 966.

exert the greatest resourceful, imaginative ingenuity in devising procedures which in a day of ever-expanding dockets will permit the regulatory process to function properly with reasonable dispatch. Hill v. FPC, 5 Cir., 1964, 335 F.2d 355 [1964]. But we think it would be the extremely rare case where a Court would be justified in holding—as Weingarten urges us to do here—that the passage of time and nothing more presents an occasion for the peremptory intervention of an outside [12] Court in the conduct of an agency's adjudicative proceedings. This is certainly not such a case, and the decision of the District Judge, insofar as it rests on this foundation, is clearly wrong and cannot stand.[13]

■■ The other contention with respect to the asserted denial of the § 6(a) right to a disposition with reasonable dispatch must be considered in light of the Commission's established power of remand for further hearing before an examiner. Weingarten concedes, as it must, that the Commission has the power to remand a case for the taking of additional evidence.[14] But, says Weingarten, the Commission violates the command of § 6(a) because its purpose in the subsequent proceedings is to implement the Commission's arbitrary prejudgment of Weingarten's guilt even though the proceeding to adjudge that, legally and factually, has not yet been concluded.

The basis of the charge is this. The Commission, with candor, held in its March 25, 1963, order that it could not enter a cease and desist order against Weingarten on the administrative record as then developed. The reasons were two-fold. First, the Commission agreed with Weingarten that the record did not then contain evidence qualitatively sufficient to establish that at the time of the solicitation and receipt by Weingarten of promotional allowances from the suppliers, other customers of such supplier were competing with Weingarten in the distribution of goods of like grade and quality sold by such supplier. Second, the Commission found that the initial decision of the Hearing Examiner did not conform to the requirement of both the Administrative Procedure Act and the Commission's Rules that the reasons or basis for findings and conclusions upon all material issues of fact, law or discretion presented on the record be stated.[15]

12. We say "outside" court in the sense of one not in the direct chain of appellate review. See note 9, supra.

13. What we say here in no way vitiates our holding in Atlantic & Gulf Stevedores, Inc. v. Donovan, 5 Cir., 1960, 274 F.2d 794, 802. When an administrative officer or agency refuses to set the process in motion at all, entirely different considerations are present.

14. The Third Circuit only recently approved a *sua sponte* remand by the Commission for the taking of additional evidence. Scott Paper Co. v. FTC, 3 Cir., 1962, 301 F.2d 579, 584, approving Procter & Gamble Co., 1961, 3 CCH Trade Reg.Rep. (1961 Trade Cases) par. 15,-425. The power of remand was recognized in Texaco, Inc. v. FTC, D.D.C., 1962, 1962 Trade Cases par. 70,382, stay pending appeal denied, D.C.Cir., 1962, 1962 Trade Cases par. 70,383. The remand power is conferred by § 8 of the Administrative Procedure Act, 5 U.S.C.A. § 1007, Attorney General's Manual on the Administrative Procedure Act 84–85, and is expressly recognized in the Commission's Rules of Practice 4.19(d)(1), (2); 4.22(a), 16 C.F.R. §§ 4.19(d)(1), (2); 4.22(a). Certainly the Commission's obligation to protect the public interest, P. Lorillard Co. v. FTC, 4 Cir., 1950, 186 F.2d 52, 55, forms a basis for the exercise of the remand power, and Courts remand matters to the Commission under similar circumstances as a matter of course. E.g., Scott Paper Co. v. FTC, 3 Cir., 1962, 301 F.2d 579. In one of the related supplier cases, see note 4, supra, the Court remanded to allow the respondent to develop evidence of a defense. Shulton, Inc. v. FTC, 7 Cir., 1962, 305 F.2d 36. Finally, the discretion of the Commission to regulate its affairs is doubtless no less than that affirmatively held to have been conferred on the NLRB in Deering Milliken, Inc. v. Johnston, 4 Cir., 1961, 295 F.2d 856, 868.

15. Administrative Procedure Act § 8(b), 5 U.S.C.A. § 1007(b); FTC Rules of Practice § 4.19(b), 16 C.F.R. § 4.19(b).

Noting that Weingarten did not question that element [1] of the violation [16] was made out, the Commission made this observation about element [2]:

"Proof sufficient to establish the second criteria should not be difficult to adduce, since it involves merely a showing of the exact identity of the products purchased by the respondent from a supplier who granted it an allegedly discriminatory promotional allowance and the same showing for any of respondent's competitors who did not receive the allowance."

16. The gist of the violation here charged is that Weingarten violated § 5 of the Federal Trade Commission Act by the knowing receipt or inducement of a promotional allowance violative of § 2(d) of the Clayton Act as amended by the Robinson Patman Act. The Courts have uniformly endorsed this formulation by the Commission of the controlling legal principle. Grand Union Co. v. FTC, 2 Cir., 1962, 300 F.2d 92; American News Co. v. FTC, 2 Cir., 1962, 300 F.2d 104; Giant Food, Inc. v. FTC, D.C. Cir., 1962, 307 F.2d 184. In the Commission's words, the basic factual elements of the offense are (we have enclosed the numbers in [ ] for ease of reference):

"[1]. The solicitation and receipt by respondent in commerce of payments for promotional services in connection with the resale of a supplier's product.

"[2]. That at approximately the time of the solicitation and receipt, other customers of the supplier were competing with the recipient in the distribution of the grantor-supplier's goods of like grade and quality.

"[3]. The payments received by respondent were not affirmatively offered by the suppliers to such competing customers on proportionally equal terms.

"[4]. That respondent possessed information sufficient to put upon it the duty of making inquiry to ascertain whether the granting suppliers were making such payments available to its competitors on proportionally equal terms."

17. The 10 witnesses were employees or officers of retailers or wholesalers distributing goods in one or more trade areas served by Weingarten.

18. As respects retailer witnesses, the Commission observed failure to develop

The Commission then remarked that the 10 witnesses relied upon by Complaint Counsel to prove this element of the case [17] "were probably in command of the facts needed to satisfy this criteria but the examination by counsel failed to elicit them."

At this point, the Commission presented detailed examples by way of illustration of "the defects in the evidence." Organizing the examples into distinct categories of retailer [18] and wholesaler [19] testimony, the Commission found a number of things which made the testimony of these witnesses inadequate on which

the form of business organization utilized by certain retail units, the exact capacity or position occupied by the witness with the organization, the specific products of suppliers granting allowances to Weingarten purchased and resold by allegedly competitive retail units during the relevant 1958 and 1959 periods, the volume of such products purchased and resold, whether such products were stocked in all stores of the retail unit, and if not, the identity of the stores stocking such products.

19. With respect to the wholesaler testimony, these witnesses were apparently all officials of food wholesaling concerns which conducted a substantial part of their business with voluntary groups of cooperating retailers who trade under the same name and purchase the bulk of their supplies from the particular wholesalers. Complaint Counsel contended that these groups should be considered as a competitive unit as to Weingarten in the distribution of goods. As to this testimony, the Commission noted that it did not reveal the portion of the wholesalers' purchases from allegedly discriminating suppliers which were resold to retailers which did not belong to the cooperative group, did not show whether suppliers considered the retailer-wholesale cooperatives as a unit and normally paid promotional allowances to them as a unit, failed to show in sufficient detail the operation of the groups particularly with respect to their dependence on the participating wholesalers, and did not identify the particular member stores in competition with Weingarten or in instances where stores were shown to compete failed to show that these stores handled and sold items similar in grade and quality to those purchased by Wein-

to then base a conclusion. After reviewing this evidence, the Commission concluded that although "a good deal of reliable and important information was secured from the ten 'competitor' witnesses," the evidence was not then sufficient on which to base a conclusion as to element [2]. Observing that a "definitive finding" on elements [3] and [4] [20] could not be made until element [2] was resolved, the Commission deferred consideration of these matters.

Expressly recognizing that a "remand of a case to a hearing examiner for further proceedings is never lightly ordered," the Commission proceeded to state its justification for the action being taken.

> "This matter has now been in litigation for slightly more than three years and both the public and respondent have incurred substantial expense in its trial. As we stated earlier, this case is attended with a great deal of public interest [21] and to now order dismissal for failure of proof without finally deciding the legality or illegality of the respondent's acts would waste all of the money and effort heretofore expended. This would be a disservice both to the respondent and to the public and cannot be seriously contemplated. There is no question but that the public interest cannot be permitted to suffer because of the mistakes of Commission personnel."

The Commission concludes that the remand "does not envision a complete re-

trial of all of the issues involved in [the] proceeding." It confined the hearing on remand to receipt of evidence "pertaining to questions which [the] opinion points out cannot be decided on the present record," and suggests that not "more than five full hearing days for each side will be needed to adequately shore up [the] record." It then suggested that the hearing "be concluded with dispatch and * * * [ordered] that the hearing examiner and the parties make every effort to complete the reception of evidence within 90 days." [22]

To this Weingarten responds that the language of the opinion, the uncertainty of Complaint Counsel and the Hearing Examiner as to how to proceed on remand, and the alleged inability of Complaint Counsel to adduce the evidence required by the Commission's opinion demonstrate that the remand is purely and simply the attempt of a biased Commission to effectuate the prejudgment of Weingarten's guilt.

Weingarten attempts to demonstrate prejudgment by quoting excerpts such as: "proof to establish the second criteria should not be difficult to adduce," "these witnesses [10 'competitor' witnesses] were probably in command of the facts needed to satisfy this criteria but the examination of counsel failed to elicit them," the "public interest should not be permitted to suffer because of mistakes of Commission personnel," not "more than five full hearing days for each side will be needed to adequately shore up this record," and the like.

garten from suppliers who granted it an allegedly discriminatory promotional allowance.

20. The elements are detailed note 16, supra.

21. The public interest referred to here by the Commission is developed at an earlier point in its opinion. Basically, the Commission position is that it has two methods of attacking what it apprehends is a knowing inducement of promotional allowances violative of § 2(d) of the Clayton Act. It may proceed against the alleged inducing customer as it did here or it may bring complaints against each sup-

plier thought to be granting a discriminatory promotional allowance. The latter approach would, in the Commission's words, ordinarily "result in a myriad number of suits with attendant expense." Whereas a "successful prosecution [of the customer] may effect the cessation of a whole series of law violations."

22. The balance of the Commission's opinion is devoted to demonstrating the formal deficiencies in the initial decision. No complaint is here made by either party of the Commission's action in this respect, and in such ominous silence we express no opinion as to its correctness.

Weingarten then tries to build a structure of prejudgment out of the colloquy between the Examiner and Counsel on the initial exploratory conference after the remand order.

Finally, Weingarten suggests that if the evidence was not uncovered by the five years of investigation and three years of trial by experienced counsel, it does not exist. Support for this proposition is generated, says Weingarten, by the fact that the Commission did not take the evidence itself, rather than remanding to the Hearing Examiner.

In our view, none of these factors, whether considered singly or in the aggregate, demonstrate the alleged prejudgment. The Commission opinion, taken as a whole represented a proper adjustment of the rights of the public and Weingarten. It was not prejudgment at that stage for the Commission to indicate some likely, even though tentative, views. For example, there was no real question about the solicitation and receipt of allowances by Weingarten. This, of course, is not unlawful. But the record also revealed that business organizations which operated or supplied two or more retail outlets had purchased goods from the same suppliers without receiving allowances. With the record in this stage of development, the Commission's action shows no prejudgment. On the contrary, it shows the Commission's careful regard for the protection of the rights of both Weingarten and the public in its insistence on evidence which not only pointed the finger accusingly at the respondent, but qualitatively afforded a reliable basis for a final adjudication:

"Antitrust cases and, in particular, Robinson-Patman cases require a meticulous attention to minute details. When dealing with prices, allowances and goods of like grade and quality, the Commission may not indulge in assumptions or presumptions, for these matters are susceptible of exact proof and this is the type of showing which must be made. The evidence adduced in this record in support of the element under consideration is, of course, not totally lacking in probative value, for a good deal of reliable and important information was secured from the ten 'competitor' witnesses. But the evidence does not quite reach the level of reliability and substantiality necessary for a concrete finding on this particular point."

The Commission's analysis of the deficiencies of this testimony, notes 18 and 19, supra, reflects that there was good basis for the conclusion that the evidentiary details thought desirable to give complete trustworthiness to the testimony would be readily forthcoming, probably from these very witnesses themselves. If not, it seems plain to us that apart from mechanical difficulties, there could hardly be any real problem in getting data as to exact sales and purchases, item by item, made by these suppliers and competitors.

Under such circumstances, what is a Commission charged by statute with the serious responsibility of effectuating statutory policy to do? Must it, on the one hand, in the face of a record indicating substantial basis for a likely finding of statutory transgressions, simply acquiesce in a default, largely for technical, not substantive, deficiencies? Or must it, out of some supposed attitude of administrative advocacy, press on, leaving the respondent to its appeal to the Court of Appeals whose dockets are already overcrowded without adding as grist to the judicial mill deficiencies which the administrative body is perfectly willing procedurally to correct? Cf. McDowell v. Celebrezze, 5 Cir., 1962, 310 F.2d 43, 44.

If—and fortunately the if does not exist—due process is measured by mere externals, there might be some concern that a tribunal had "prejudged" by making a tentative, though uncertain, judgment. But in the light of actions by Courts, it would be a strange thing for Courts to censure administrative agencies for doing what Courts often do. Thus, for example, under Bryan v.

United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335, and cases such as our own Gulf Oil Corp. v. Wright, 5 Cir., 1956, 236 F.2d 46, we frequently remand both criminal and civil cases for a full or partial retrial. Such situations are, in effect, a holding that while the evidence was legally deficient, nevertheless the record indicates that more or better evidence is available on a new or further trial and a system of justice dedicated to the objective of finding the truth ought not to balk at affording an opportunity of "shoring up" the case. That the Examiner expressed some quandary is of no moment. Doubtless many times both the District Judge and the lawyers are uncertain whether in remands we meant what we said or said what we meant.[23] But no one has yet argued that merely because the exact nature of the proceeding on remand is left to the rather loosely confined discretion of the District Judge in light of what in some cases may arguably be unhelpful direction from an appellate court, the remand is itself somehow defective. That is in essence what Weingarten urges here, and it is plain that we do not agree.

 Actually the District Judge, by permitting the Commission itself to take action within 30 days, recognized that it was proper for the Commission to obtain additional or clarifying evidence. But this prohibition on the use of an Examiner is an unwarranted intrusion into the administrative process by a Judge. Unlike traditional court proceedings which have a constitutional genesis and function so that judging must ordinarily be done by Judges, not Masters, LaBuy v. Howes Leather Co., 1957, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, Congress recognizes that in administrative adjudication much must be left to hearing officers. Indeed, it is the fact finding function through the inescapable use of hearing officers, their sense of independence, and the review of their findings which has been at the core of the concern for improving the quality of such actions. With the wide range of its statutory responsibilities, the number and complexities of the kind of matters it must handle,[24] there is simply no basis for the District Judge taking it on himself to tell the Commission how it should husband and deploy its resources and manpower.

### III.

 In light of what we have said in Part II concerning the alleged prejudgment of Weingarten's case, the argument that the proceedings before the Commission must be stopped because bias and prejudice has reared "its ugly head," NLRB v. Phelps, 5 Cir., 1943, 136 F.2d 562, 564, is equally lacking in merit. This is not a case like Accardi[25] where

23. As an illustration of the uncertainty that may be occasioned by an appellate court's remand, see Bros Inc. v. Davidson, 5 Cir., 1964, 330 F.2d 65, denying writ of mandamus arising out of proceedings pursuant to opinion and remand Bros Inc. v. W. E. Grace Manufacturing Co., 5 Cir., 1963, 320 F.2d 594.

24. A brief look at the Federal Trade Commission Annual Rep. 1963 gives a clear indication of the variety and immensity of the task, which aided by its 1,178 staff members, it must perform. For example, the Commission processed outside 4,562 applications for complaint of deceptive practices and reviewed 516,352 radio and TV scripts of commercials and 302,572 pages of print material. It received 1,309 applications for complaint of restraints of trade and issued 230 complaints and 261 orders. It made a total of 14,682 inspections in the process of enforcement of the wool, fur and textile acts. The 19 attorneys assigned to do appellate work for the General Counsel's Office handled 127 cases, an increase of 41 over the previous year. In addition to issuing a total of 431 complaints and 454 cease and desist orders, the Commission conducted numerous economic studies and under its industry guidance program handled by letter and telephone more than 1,500 requests from businessmen on how to resolve their difficulties in conforming their practices with the law.

25. United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681.

the authority having the ultimate decision dictated the result to the body charged with the initial decision. Neither is it a case like Amos Treat [26] where one who actively engaged in the prosecution of a case at its initial stages became a judge of guilt or innocence at a later stage. There is here no direction to convict—no intimation as to how the initial decision should be made. Indeed, in light of the strict standard of proof announced by the Commission and the rigid directions in regard to the making of findings of fact by the Hearing Examiner, the initial decision may well be in favor of Weingarten.

In light of the foregoing, it is apparent that the injunction must be dissolved.[27] That means, of course, that the Commission is free to reinstate the case on its docket and proceed pursuant to the remand.

Nothing we have said is to be interpreted as a gratuitous effort to influence any Court of Appeals to which the final order, if issued, may be appealed. Ours is quite a different function in reviewing the intrusion of an "outside" Court into the incompleted administrative proceedings. Approached from this vantage point, the reasonableness of agency action of the sort here involved must be tested in light of our recent observation that "Courts are finding day by day that there is both a need to meet extraordinary problems and ample procedural resources to do the job." [28] We cannot say here that the Commission's adoption of a procedure somewhat akin to the two-bite process approved in Hill for some Federal Power cases is an unreasonable accommodation of procedural resources to the job at hand.

Reversed with directions to dissolve the injunction.

26. Amos Treat & Co. v. SEC, D.C.Cir., 1962, 306 F.2d 260.

27. The conditional nature of the Commission's dismissal of the proceedings makes inapposite the authorities cited by Wein-

garten in support of the contention that the matter is now moot.

28. Hill v. FPC, 5 Cir., 1964, 335 F.2d 355, 364 and n. [1964].