**CAROLINA FREIGHT CARRIERS CORPORATION, a Corporation, Cherryville, North Carolina,**
and
Mercury Motor Express, Inc., a Corporation, Tampa, Florida, Plaintiffs,

v.

The **UNITED STATES** of America and the Interstate Commerce Commission, Defendants,
and
R–C Motor Lines, Inc., Intervenor-Defendant.

Civ. A. No. 2496.

United States District Court
W. D. North Carolina,
Charlotte Division.

Nov. 3, 1969.

Frank A. McCleneghan, Hall Morrison Johnston, Jr., McCleneghan, Miller, Creasy & Johnston, Charlotte, N. C., Edwar G. Villalon, David C. Venable, Jon F. Hollengreen, McInnis, Wilson, Munson & Woods, Washington, D. C., for Carolina Freight Carriers Corp., Cherryville, N. C., and Mercury Motor Express, Inc., Tampa, Fla., plaintiffs.

Richard W. McLaren, Asst. Atty. Gen., Robert A. Hammond, III, Acting Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Keith S. Snyder, U. S. Atty., Asheville, N. C., for the United States, defendant.

Robert W. Ginnane, Gen. Counsel, and Nahum Litt, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission, defendant.

Joseph M. Griffin, Griffin & Gerdes, Charlotte, N. C., and J. Edward Allen, Glickstein, Crenshaw, Glickstein, Hulsey & Fay, Jacksonville, Fla., for R-C Motor Lines, Inc., Jacksonville, Fla., intervening defendant.

Before CRAVEN, Circuit Judge, and JONES and McMILLAN, District Judges.

## MEMORANDUM OF DECISION AND ORDER

WOODROW WILSON JONES, Chief District Judge:

This action was instituted by the plaintiffs Carolina Freight Carriers Corporation and Mercury Motor Express, Inc., to set aside, enjoin and annul a determination and order made and entered by the Interstate Commerce Commission in a proceeding entitled, R-C Motor Lines, Inc.—Extension—Florida, Docket No. MC–75651, (Sub. No. 57). The complaint challenges the action of the Commission in granting R-C Motor Lines (hereinafter referred to as "R-C") authority to transport general commodities, with the usual exceptions, over certain regular routes between Jacksonville, Florida, and certain points in Florida, including Miami, Tampa, and Sarasota, serving all intermediate points and the off-route points of Cape Kennedy, Umatilla, Eustis, and Groveland and points in Florida within a 25-mile radius of Jacksonville, Orlando, Haines City and Tampa. At the present time R-C Motor Lines operates between Boston and Jacksonville serving numerous States and areas between, and operates a daily scheduled service between authorized points in the transportation of less-than truckload shipments with a call and demand service afforded for the handling of truckload and substantial volume quantities. The proposed service would eliminate interchange at Jackson-

ville on shipments moving from and to Florida points.

The application filed by R-C on February 11, 1965, was opposed originally by sixteen trucking firms operating in the Florida area but four of them withdrew their opposition and another did not present evidence. Hearings were conducted before a Joint Board named and constituted pursuant to Section 205 of the Interstate Commerce Act, 49 U.S.C.A. § 305, which extended over a period from October 18, 1965, to November 10, 1966, resulting in more than 15,000 pages of testimony and 700 exhibits. The Board filed a report and recommended order on April 3, 1968. The Commission entered its Decision and Order on February 3, 1969, adopting the Board's statement of facts, conclusions and findings and affirmed the Joint Board's recommended order. On March 12, 1969, plaintiffs filed a joint petition for leave to file a petition for reconsideration and for further hearing, which was denied by the Commission on May 1, 1969.

The plaintiffs contend the order of the Commission was arbitrary, capricious, unreasonable, and was based upon an unwarranted general and conclusionary interpretation of the facts of record. They further contend that the Commission abused its administrative discretion and failed to properly evaluate the evidence of record, and that its order was based upon misinterpretation of both the law and the evidence.

The petition for temporary restraining order was heard by Honorable James B. McMillan, District Judge, and the Commission was restrained from issuing operating rights or a Certificate of Convenience and Necessity to R-C, pending decision of a three-judge court on the merits of the case. The case was set for hearing before a three-judge court pursuant to 28 U.S.C.A. § 2284, and was heard before Circuit Judge J. Braxton Craven, Jr., and District Judges Woodrow W. Jones and James B. McMillan on August 18, 1969.

We affirm the Commission, dissolve the restraining order, and dismiss the action.

The pleadings and briefs filed by the plaintiffs contain some fourteen specific instances in which they claim the Commission erred. By consolidation, these assignments of error can be stated as follows:

1. The Commission committed error in deciding the proceeding was administratively final when order of February 10, 1969, was issued, and erred in not allowing plaintiffs to file a petition for reconsideration.

2. The Commission erred in failing properly to consider the impact of new services authorized after the close of the record in this case but before order of February 10, 1969, and erred in describing authority in terms of a mileage radius.

3. The Commission erred in failing to properly weigh, consider and discuss the evidence presented.

4. The Commission's order was not supported by substantial evidence of record.

5. The Commission erred in placing the initial burden of proof on plaintiffs to prove they could meet the proposed service standards of R-C Motor Lines, without first requiring R-C, as applicant, to prove its ability to meet those standards, and to prove it was in a position to render the proposed service.

6. The Commission erred in not finding that R-C had failed to sustain the burden of establishing a need for public convenience and necessity.

The test on this judicial review is whether the action of the Commission is supported by substantial evidence on the record as a whole, and whether the Commission's procedures have denied the plaintiffs any substantive rights. 5 U.S.C.A. § 706 (formerly § 1009); Illinois Central Ry. Co. v. Norfolk & W. Ry. Co., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162; Youngblood Truck Lines v.

United States., 221 F.Supp. 809 (W.D. N.C.1963); Clay Hyder Trucking Lines v. United States, 234 F.Supp. 673; and Carolina Freight Carriers Corp. v. United States, 297 F.Supp. 848 (W.D. N.C.1969).

Under these broad and basic issues, the Court will consider all the material assignments of error contained in the pleadings and briefs.

*Did the Commission's procedures deny the plaintiffs any substantive rights?*

Plaintiffs contend that the Commission's action in using its "Dando" or Short Form Decisional Process was arbitrary and capricious and that if its use were discretionary, the Commission abused its discretion. They contend that the Commission used the Short Form and adopted the findings and conclusions of the Joint Board and affirmed its report without considering certain important happenings subsequent to the hearing and which were pertinent to the decision. They further contend that the Commission admits and recognizes in its short decision that mistakes of various kinds appear in the Joint Board's report but these mistakes are not identified and there is no indication what consideration was given them. These contentions are without merit.

The Commission adopted the Joint Board's statement of facts and conclusions of law using the following language: *"We find,* That the evidence considered in the light of the pleadings does not warrant a result different from that reached by the joint board; and that the statement of facts, the conclusions, and the findings of the joint board, being proper and correct in all material respects, should be, and they are hereby, affirmed and adopted as our own."

██ ██ It is now settled law that when the Commission finds no material error in the statement of facts and the conclusions thereon of the Joint Board or hearing examiner, it is not required to prepare a detailed report, but may affirm and adopt the report of such board or examiner as its own. This application was filed February 11, 1965, and now after four and one-half years, 15,000 pages of testimony and 700 exhibits, we are asked to send it back for further hearings because the Commission did not prepare its own detailed report. Judge Brown of the Fifth Circuit, in the case of F.T.C. v. J. Weingarten, Inc., 336 F.2d 687 (1964), after referring to a case in which the Supreme Court of the United States had deplored the "nigh interminable" delay in connection with some administrative agency proceedings, said:

"And we are the first to emphasize that agencies must exert the greatest resourceful, imaginative ingenuity in devising procedures which in a day of ever-expanding dockets will permit the regulatory process to function properly with reasonable dispatch. Hill v. FPC, 335 F.2d 355 (5th Circuit 1964)."

In Younger Brothers, Inc. v. United States, 238 F.Supp. 859 (S.D.Tex.1965), the Court said:

"This leaves only the tag end contention that in its disposition of the case, the Commission failed to comply with the requirements of § 8(b), 5 U.S.C.A., § 1007(b) (Now § 557) of the APA, that the order reflect the reasons and basis for the findings and conclusions. If this is a claim that Division 1, otherwise fully satisfied with Examiner's Report, has to go through the laborious process of issuing its own decision-report, it quickly fails. The Commission, as do other adjudicatory tribunals, court or administrative, has the right, if not the duty, to exercise imaginative resourcefulness and judicial inventiveness in developing procedures which enable it to stem the tide of ever increasing backlogs. See FTC v. J. Weingarten, Inc., 336 F.2d 687 (5th Cir. 1964)." [Other citations omitted].

"The 'Dando' device is certainly permissible. North American Van Lines, Inc. v. United States, N.D.Ind. (3-Judge), 1963, 217 F.Supp. 837, 842; Deioma Trucking Co. v. United States,

N.D. Ohio (3-Judge) 1964, 233 F.Supp. 782, 783. When pursued it means, of course, that the Commission's action stands or falls with the Examiner's Report."

The Administrative Procedure Act does not require the Commission or the Examiner or Joint Board to make a full, complete and precise finding on every issue raised by the parties. Minneapolis & St. Louis R. Co. v. United States, 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed. 2d 223. The Act requires findings sufficiently complete to enable the reviewing court to discuss with confidence the Commission's conclusions and its underlying reasons and then to judge whether the Commission acted within its statutory powers. Alabama Great Southern R. Co. v. United States, 340 U.S. 216, 71 S.Ct. 264, 95 L.Ed. 225.

The Joint Board's Report and the Commission's order affirming and adopting such report meet these criteria.

The plaintiffs assert that the Commission's decision and order dated February 3, 1969, and served February 10, 1969, is not administratively final because the order differs from the report and recommendation of the Joint Board and that the Commission erred in not allowing plaintiffs to file a petition for reconsideration. They contend that modifications and changes were made in the Joint Board's report in the following pertinent instances: 1) The Joint Board found that Redwing Refrigerated, Inc. (formerly Blythe Motor Lines, Inc.) had advised R-C's attorney that it withdrew its protest to the application, but the Commission found that the record does not indicate that Redwing withdrew its protest and took cognizance of the fact that Redwing is a proper party to the proceeding with the right to appear and participate; 2) questioned and then approved the propriety of the territorial description utilized in the application and recommended by the Joint Board; 3) recognized the existence of the new certificate issued to Alterman Transport Lines, Inc., since the hearing, and 4) mentioned that errors of fact existed in the report.

Rule 101(a) (2) of the Commission's General Rules of Practice, 49 C.F.R. 1100.101(a) (2), provides that an order of a division of the Commission affirming the decision of a hearing officer is administratively final. That section provides in part:

"2. Administrative finality of division and employee board decisions. All decisions, orders, or requirements of a division of the Commission in any proceeding shall be considered administratively final, except those involving issues of general transportation importance, those wherein the division reverses, changes, or modifies a prior decision by a hearing officer * * * "

It appears that Redwing had filed a protest and its counsel made an appearance at the initial hearing, but never returned, and offered no evidence. Since the record did not show a withdrawal, the Commission's comment and order were necessary to set the record straight but were not significant to the disposition of the proceeding and did not modify the decision. The Commission further commented that mileage descriptions of authority were not favored but there was no other practical way of identifying the area in which the service was needed and on that basis approved such mileage descriptions. The Commission recited in its order, that authority had been granted to Alterman, since the hearing, to operate from Charlotte, North Carolina, to points in Florida, and mentioned that the Joint Board's report contained certain minor errors of fact. These references merely serve to advise all parties that the Commission took cognizance of these matters and considered the issuance of new operating rights in the same territory. The Commission nevertheless proceeded to find and determine that the evidence as a whole indicates that the service to the areas involved is inadequate and the proposed service is needed. None of

these findings or notations change the decision in any respect.

 It is for the Commission to decide in the first instance whether a modification has occurred within the meaning of its regulations. Unless the Commission's decision is clearly erroneous, it should be affirmed. We hold that there were no modifications or changes made by the Commission as contemplated by the Rule, and that the Commission's proceeding was administratively final upon issuance of its decision and order dated February 3, 1969, and served on February 10, 1969.

 There is no merit to the contention that the Commission committed error when it denied plaintiffs' motion or petition for reconsideration and further hearing. It is well settled that petitions for rehearing, reconsideration or further hearings are addressed to the discretion of the administrative agency and that denial of such petitions is not open to question unless there is a clear abuse of the agency's discretionary authority. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Carolina Scenic Coach Lines v. United States, 59 F.Supp. 336 (W.D.N.C.1945), affirmed 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398 (1945).

 It appears the plaintiffs filed a motion or petition for leave to file a petition for reconsideration and for additional hearings instead of a petition for reconsideration or rehearing. It is clear that the Commission in its order of April 18, 1969, ruled on plaintiffs' arguments on the merits even though it denied the petition as filed.

There was no abuse of discretion on the part of the Commission nor was there any denial of administrative procedural due process of law.

We next consider the assertion by the plaintiffs that the Commission committed error in failing properly to consider the impact of new services authorized after the close of the record but before the order of February 3, 1969. The Court finds no merit in this contention.

The Joint Board's Report was served on April 3, 1968, and on August 2, 1968, new operating authority was issued to Alterman Transport Lines, Inc., to serve certain points in Florida. The plaintiffs did not raise this question until March 12, 1969, when they filed their petition for leave to file a petition for reconsideration and for rehearing.

In its Decision and Order of February 3, 1969, the Commission specifically stated:

"*It further appearing,* (1) That subsequent to service of the joint board's report, Alterman Transport Lines, Inc., on August 2, 1968, was issued a certificate in No. MC–107107 (Sub-No. 343), to transport general commodities, with exceptions, over described regular routes, between Charlotte, N. C., and certain points in Florida, serving all intermediate points in Florida, and with service authorized at all points in Florida not on such routes, points in Mecklenburg County, N. C., and Florala, Ala., as off-route points, and (2) that the joint board's recitation of facts contained certain minor errors of facts; that notwithstanding the above, the evidence of record, considered in toto, is persuasive that existing service from and to the involved points is inadequate, and that the supporting shippers have a need for the transportation service recommended by the joint board; \* \* \*"

In the final order denying plaintiffs' petition for leave to file petition for reconsideration, the Commission stated:

" \* \* \* that, even if the proceeding was reopened to receive such additional evidence, such evidence would not warrant a result different than that reached by Division 1 in its decision and order of February 3, 1969, \* \* \*"

It therefore appears to this Court that the Commission considered the prior

grant of authority to Alterman on two separate occasions.

█ We find the contention that it was error for the Commission to describe portions of the authority granted in terms of a mileage radius around named points and to conclude that the granted authority could not feasibly be described in any other manner to be totally devoid of merit. The Commission in this instance did nothing more than adhere to its established doctrine that unless a mileage description is a more convenient method of describing the authority sought, it should be avoided. In most instances authority is described by county or definite boundaries such as rivers or highways, but here the Joint Board and the Commission found that the mileage description provided the only suitable method of properly identifying the area where the service was needed.

The plaintiffs participated in the lengthy hearings, offered evidence and cross-examined witnesses, filed exceptions to the findings and conclusions of the Joint Board, filed a motion to be allowed to file a petition for reconsideration and additional hearings which was heard and decided on its merits, and have pursued their court remedy. The plaintiffs have been afforded procedural due process, and this Court can find no instance in which they have been denied any substantive rights.

*Is the action of the Commission supported by substantial evidence?*

The plaintiffs assert that the Commission's decision was not supported by substantial evidence of record and that the Commission failed to give proper weight, consideration, and evaluation to that evidence. We have examined the testimony and exhibits and find that an impressive record has been built showing a need by the shipping public for additional motor carrier service. The Joint Board listed sixty-eight (68) findings of fact with respect to shippers needs and the lack of available service to meet their needs. Complaints from shippers range over a wide area, including inadequate pick-up or delivery, refusal to transport small shipments, unreasonable time in transit, and inability to trace shipments. As a result of these deficiencies shippers and consignees in large numbers contend that work stoppages have occurred, businesses have been unable to plan inventories and sales campaigns, and that businesses in general have sustained losses.

The witnesses called to testify were legion. The applicant contends in its brief that 254 public shippers and receivers throughout Florida and the R-C territory gave testimony as to the need for the proposed service and the lack of adequate service at this time. This Court has made no effort to count the witnesses, but a casual tabulation reveals at least twelve sizeable business firms complained of unreasonably long transit time of shipments; nine complained about unsatisfactory efforts to trace items, and many others joined these in complaining about the poor pick-up service, unreasonable delay in producing proof of delivery and of customers asking shippers not to use certain carriers. These complaints were not isolated incidents but seemed to recur frequently.

Representatives from twenty-four Chambers of Commerce, mostly from Florida, testified to the tremendous growth of the area and its need for the type and character of service proposed by the applicant.

The Court recognizes the almost insatiable demand of the public for improved services and can detect in some of the testimony a desire for a transportation system keyed to the needs and desires of each firm, or area, at the expense of the public and the trucking firms. Chambers of Commerce are prone to reach for the moon in an effort to advance their particular area. Some of the complaints in this record are not founded upon sound footing. However, a review of all the evidence compels the conclusion that the territory and its transportation needs are growing at a rapid pace and that the present service is not adequate to meet these needs.

 The plaintiffs offered evidence —some of which was strong and convincing—that the service now being rendered by them to the public is adequate to meet the transportation needs of the area. However, this Court is not sitting as a jury to determine the weight and credibility of the evidence. If the order of the Commission is based upon adequate findings which are supported by substantial evidence, it must be upheld even though we might reach a different conclusion on the facts presented. Rochester Telephone Corporation v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

 It is the province of the Commission to make findings of fact, to draw legal inferences therefrom and to evaluate and determine the weight to be given conflicting evidence. United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243. There is a presumption that the Commission has properly performed its official duties and this presumption supports its acts in the absence of clear evidence to the contrary. Interstate Commerce Commission v. Jersey City, *supra.*

The plaintiffs argue that the Commission acted arbitrarily in failing to consider that grant of authority to the applicant would be unduly prejudicial to the carriers already certified to operate in the area. They contend that once a certificate is issued by the Commission to a motor common carrier to provide services that no additional authorities in that territory can be issued to another motor common carrier until the first carrier has had full opportunity to provide the services. The case of Dixie Highway Express, Inc., v. United States, 242 F.Supp. 1016, is cited as authority *for this contention. Another opinion in* this same case is reported in 268 F.Supp. 239. However, the United States Supreme Court reversed the District Court in this case and sustained the position of the Commission as reported in United States v. Dixie Highway Express, Inc., 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639. The Supreme Court said in this opinion:

"The District Court erred in holding that it is the 'unvariable rule' of the Commission to grant existing carriers an opportunity to remedy deficiencies in service, and in holding that carriers have a property right to such opportunity before a new certificate may be issued upon a lawful finding of public convenience and necessity pursuant to the statute. The Commission's power is not so circumscribed. No such limitation has been established by the Commission's own decisions or by judicial determinations. It is, of course, true that the Commission should consider the public interest in maintaining the health and stability of existing carriers, see United States v. Drum, 368 U.S. 370, 374, 82 S.Ct. 408, 410, 7 L.Ed.2d 360 (1962); but it is also true that, upon the basis of appropriate findings, 'the Commission may authorize the certificate even though the existing carriers might arrange to furnish successfully the projected service.' ICC v. Parker, 326 U.S. 60, 70, 65 S.Ct. 1490, 1495, 89 L.Ed. 2051 (1945); See Schaffer Transportation Co. v. United States, 355 U.S. 83, 90–91, 78 S.Ct. 173, 177, 178, 2 L.Ed.2d 117 (1957). Accordingly, we reverse and remand for further proceedings consistent with this opinion."

 Inherent in the meaning of the term "public convenience and necessity" is the national policy declared by the Congress of developing and maintaining a strong and healthy interstate transportation system. This policy compels the Commission to consider the economic effect any additional authority will have upon the existing carriers in the area. The authority of existing carriers is not such that further competition is automatically prohibited but is such that requires the Commission to consider the public interest in maintaining the health and stability of existing carriers. These existing carriers are entitled to their day in court and must be

732

afforded due process of law. The Court believes that such consideration was given to the existing carriers in this case. The Joint Board, after summarizing the evidence of the protesting carriers, found:

"The Joint Board upon careful examination of this record must conclude that the service of existing carriers has been inadequate to meet the reasonable requirements of the public. In doing so it is cognizant of the Commission's decisions in this regard. In keeping with the national transportation policy, the Commission is required to promote an adequate and efficient transportation service and must consider such factors as the existence of sufficient carrier capacity to encourage competition, incentives for real innovation and improvements in service to the public without a needless duplication of service or the creation of excess capacity."

The Joint Board also found:

"Public convenience and necessity has been shown to require the consistent and predictable service proposed by applicant. There were large and small companies who by strong and convincing evidence force this conclusion. The usual strong factor of inadequate transit time was proven. Other compelling factors for need of an additional carrier and the proposed service were those of (1) congestion on the part of existing carriers with inbound traffic to Florida and delays because of congestion, (2) a reluctance of existing carriers to accept small shipments, (3) completely inadequate pick-up service throughout the R-C territory, as well as Florida, (4) very slow claim handling and tracing, (5) a refusal to accept Florida traffic unless tendered traffic to other areas, (6) a failure to actually service the territory authorized to be served, and (7) an absence of daily pick-up and delivery service to many points."

The Court can find no merit in the other contentions of the plaintiffs. There is no basis for the contention that the Commission placed the burden on the plaintiffs to prove they could meet the proposed service standards of R-C, or that it failed to require R-C to prove that it was in a position to render the proposed service.

 The Joint Board found from the evidence that the service to the area in question was inadequate and that public convenience and necessity required additional service. It found that R-C, the applicant, is fit, willing and able to provide the proposed service. The Commission approved and confirmed the Joint Board's report and recommendation and adopted the same as its own without modification or change.

We find that the Commission's order is based upon adequate facts which are supported by substantial evidence and same should be affirmed. We, therefore, affirm the Commission, dissolve the restraining order, and dismiss the action.