PILOT FREIGHT CARRIERS, INC., a corporation, Winston-Salem, North Carolina, Plaintiff, and Alterman Transport Lines, Inc., et al., Intervening-Plaintiffs,

v.

The UNITED STATES of America, and The Interstate Commerce Commission, Defendants, and Overnite Transportation Company, Intervening-Defendant.

Civ. A. No. C-87-WS-72.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Dec. 14, 1972.

John M. Minor, Deal, Hutchins & Minor, Winston-Salem, N. C., William F. King, Major, Sage & King, Alexandria, Va., for Pilot Freight Carriers, Inc., Plaintiff, and Alterman Transport Lines, Inc., Intervening-Plaintiff.

John M. Minor, Deal, Hutchins & Minor, Winston-Salem, N. C., James E. Wilson and Jon F. Hollengreen, Wilson, Woods & Vilalon, Washington, D. C., for Carolina Freight Carriers Corporation and R–C Motor Lines, Inc., Intervening-Plaintiffs.

Thomas E. Kauper, Asst. Atty. Gen., Walker B. Comegys, Acting Asst. Atty. Gen., John H. D. Wigger and Carl D. Lawson, Attys., Department of Justice, Washington, D. C., and William L. Osteen, U. S. Atty., Greensboro, N. C., for United States of America, Defendant.

Fritz R. Kahn, General Counsel, Arthur J. Cerra, Acting General Counsel, Theodore E. Knappen, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission, Defendant.

Edward L. Murrelle, Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., and Eugene T. Liipfert, Ronald B. Natalie and Mark J. Andrews, Verner, Liipfert, Bernhard & McPherson, Washington, D. C., for Overnite Transportation Co., Intervening-Defendant.

Before CRAVEN, Circuit Judge, and GORDON and JONES, Chief District Judges.

### MEMORANDUM OF DECISION AND ORDER

WOODROW WILSON JONES, Chief District Judge:

The plaintiff seeks in this action to set aside, vacate, annul or otherwise suspend the order of the Interstate Commerce Commission granting a certificate of public convenience and necessity to the Intervening-Defendant, Overnite Transportation Company, hereinafter referred to as "Overnite," to transport general commodities, with exceptions, over specified regular routes extending between points in South Carolina and Georgia, on the one hand and Jacksonville, Florida, on the other. The Commission Proceeding is entitled "Overnite Transportation Company, Extension—Jacksonville, Florida, Docket No. MC–109533 (Sub. No. 39)." The Plaintiff, Pilot Freight Carriers, Inc., hereinafter referred to as "Pilot," and the Intervening-Plaintiffs, Alterman Transport Lines, Inc., hereinafter referred to as "Alterman," Carolina Freight Carriers Corporation, hereinafter referred to as "Carolina," and R–C Motor Lines, Inc., hereinafter referred to as "R–C", are motor carriers and have existing authority to operate in Florida and other areas involved in this controversy.

Overnite filed its application on December 6, 1968 under the provisions of § 207 of the Interstate Commerce Act, 49 U.S.C.A. § 307, seeking authority to transport general commodities over regular routes from Denmark, South Carolina, and Jacksonville, Florida; between Augusta, Georgia, and Fairfax, South Carolina; and between Macon, Georgia, and Jacksonville, Florida. Hearings were commenced on May 13, 1969 before Joint Board No. 354, consisting of a single member, the representative of the State of South Carolina, but were adjourned on May 14, 1969 to permit Overnite to amend and were resumed on De-

cember 8, 1969 and the record closed on April 24, 1970. The Joint Board's Recommended Report and Order finding that "the present and future public convenience and necessity require" the operations sought by "Overnite" and that the applicant "is fit, willing and able to perform" such operations was served on March 3, 1971.

The Plaintiff, the Intervening-Plaintiffs, and other protestants filed exceptions to the Report and moved to reopen for further hearings for receipt of new and additional evidence. By decision and order dated February 3, 1972, the Commission affirmed and adopted as its own the Joint Board Report, and denied the exceptions and the petition to reopen. The plaintiff then petitioned for a finding of general transportation importance, which was denied by the Commission on March 22, 1972. This action was filed on March 20, 1972, and Judge Craven denied plaintiff's application for a temporary restraining order on April 18, 1972. The three-judge court heard the matter on November 10, 1972.

Under Section 207 of the Interstate Commerce Act, the Commission is empowered and directed by Congress to issue a certificate to a qualified applicant if it finds (1) "that the applicant is fit, willing, and able properly to perform the service proposed" and (2) that the proposed service "is or will be required by the present or future public convenience and necessity." The Commission has made such finding and the matter is now before this court for review.

■ Upon judicial review the function of the court is limited in scope. The primary question for determination is whether the decision of the Commission is supported by substantial evidence on the record considered as a whole, free from errors of law and not so arbitrary, capricious or unreasonable as to constitute an abuse of discretion. Central Motor Lines, Inc. v. United States, 309 F.Supp. 336 (W.D.N.C.1969); Youngblood Truck Lines, Inc. v. United States, 221 F.Supp. 809 (W.D.N.C.1963). The

test of judicial review is whether the action of the Commission is supported by substantial evidence on the record as a whole, and whether the Commission's procedures have denied the plaintiffs any substantive right. Carolina Freight Carriers Corp. v. United States, 307 F. Supp. 723 (726) (W.D.N.C.1969); Illinois Central Ry. Co. v. Norfolk & W. Ry. Co., 385 U.S., 57, 87 S.Ct. 255, 17 L. Ed.2d 162 (1966).

■ Substantial evidence has been defined to be more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939).

■ The Plaintiffs contend that the Commission's decision is not supported by substantial evidence and the Commission abused its discretion by refusing to reopen the record for the taking of additional evidence. They do not seriously question that "Overnite" is fit, willing and able properly to perform the service proposed. "Overnite", a Richmond, Virginia based motor carrier, operates in Virginia, North Carolina, South Carolina, Georgia, Alabama, Tennessee, and West Virginia. In its present territory and as of October 31, 1969, it operated 36 terminals, including 9 in Virginia, 12 in North Carolina, 4 in South Carolina, 6 in Georgia, 1 in Alabama, 1 in West Virginia, and 3 in Tennessee. At that time the Company operated 1,971 trailers, including van type trailers of varying sizes, and refrigerated, insulated, open-top and Convert-A-Van trailers, 845 tractors and 421 city-type pickup and delivery trucks. The total number in its fleet comprised 3,306 units and additional equipment was on order. If this application is approved "Overnite" plans to build or otherwise acquire a terminal in Jacksonville and will provide sufficient vehicles to meet the transportation needs which will develop. As of September 1969 it had a net worth of 13.9 million dollars and an estimated line of credit of 6 million dollars for equipment purchases and over 4½ million for terminal acquisition. There was substantial evidence upon which the Commission found "Overnite" to be fit, willing and able properly to perform the service proposed.

The Protestants strongly dispute the Commission's finding of public convenience and necessity, contending that the action was arbitrary, capricious, erroneous, unlawful, and an abuse of administrative discretion. They further contend that the Commission's action was unreasonable; based upon an unwarranted general and conclusory interpretation of the record; failed properly to evaluate the evidence of record, and was predicated upon misinterpretations both of law and evidence.

An examination of the record consisting of 2,120 pages of testimony and 79 exhibits reveals substantial evidence that there is a public need for additional service to and from the Jacksonville area. 74 public witnesses testified as to the need for more and better service for this growing metropolitan area. 19 of the shippers were located in Jacksonville and shipped to various points in Overnite's service area, and 55 of the shippers have business enterprises located in such area. 68 witnesses complained of unreasonable delays in shipments; 36 mentioned unreliable transit time and 38 complained of no direct service to Jacksonville. 25 of the witnesses complained of problems of lost shipments and of unsatisfactory efforts to trace lost items; 24 testified to a lack of interest in Florida shipments by the carriers and 24 complained of difficulties in arranging pickup service. A textile or garment plant in Virginia and a pharmaceutical supply company in North Carolina complained of shipments to Jacksonville taking from 6 to 10 days and sometimes much longer, while a drug company in Jacksonville complained of a long history of delays in

shipments to North Carolina, South Carolina, Virginia, and Tennessee. They offered evidence tending to show that these transportation problems are causing severe financial losses. Several witnesses testified that their companies use, or desire to use, Jacksonville as a port through which to export or import goods, but that the present transportation service is inadequate for such use now. Overnite showed extensive "peddle-run" service to smaller traffic points with close ties to Jacksonville and no Protestant showed a similar service. A substantial portion of the Jacksonville traffic moves to or from small southern towns at which Overnite had existing authority at the time of the hearings.

■ The court recognizes that no transportation system could satisfy all of the shipping public at all times, and that some of these complaints are not founded on solid ground. The plaintiff offered evidence, some of which was strong and convincing, that the service now being offered and the service to be offered in the future, is adequate to meet the transportation needs of the area without this authority to Overnite. However, this court is not sitting as a jury to determine the weight and credibility of the evidence, but merely to determine whether the findings of the Commission are based upon substantial evidence. If we find that the Commission made adequate findings which are supported by substantial evidence, we must uphold its decision even though we might reach a different conclusion on the facts presented. Rochester Telephone Corporation v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147. Upon this record we must find that there was substantial evidence upon which the Commission could find a public need for additional service.

The most serious question raised by the plaintiff is whether the record is complete and reveals the whole picture of the transportation needs of the area. This contention deals with the timing of the Commission's grant of authority to Overnite. It is contended that since the Commission granted new general commodity authority to and from Florida by way of Jacksonville to *Alterman* in 1968, to *R–C* in November 1969, and to *Pilot* in July 1970 that the record here which was closed in April 1970 could not possibly reveal the complete picture of the transportation needs of the Jacksonville area. This contention is twofold—it attacks the validity of the Commission's finding of public convenience and necessity, as well as raises the question of abuse of discretion in failing to reopen the record to examine the transportation needs of the area after Pilot's most recent authority became effective. The plaintiff contends that the Commission's decision to deny Overnite's application for temporary authority after Pilot's authority became effective lends proof to its contention that there is no need for this additional service.

This contention presents a different question than merely a claim of a stale record. There is no way to avoid a stale record in a prolonged proceeding like the one at bar. Parts of the record would be stale when the hearings were concluded and the record closed. Here the plaintiff says and contends that the transportation picture changed substantially after July 1970 when Pilot's new authority became effective, and the Commission arbitrarily refused to reopen and examine the current transportation needs of the area. Such refusal, Pilot contends, is an abuse of discretion and the case should be remanded with instructions to reopen and examine this evidence now. Pilot cites and relies upon Blue Bird Coach Lines, Inc. v. United States, 328 F.Supp. 1331 (W.D. N.Y.1971).

■ This argument is strong, and at least, reveals a weak spot in the Commission's present procedure. However, we do not find the Commission's action in refusing to reopen to be so arbitrary, capricious or unreasonable as to constitute an abuse of discretion. It must be remembered that Pilot and the other Protestants had the opportunity to

present evidence as to the effect of the new service to be offered by Pilot and the other carriers upon the transportation needs of the area. This is the distinction between *Blue Bird* and the case at bar. Judge Friendly felt that the Commission procedure was unfair because it refused to permit the plaintiffs to offer evidence as to the effect of the new service, and then granted other authority upon the grounds that the plaintiffs had not offered evidence that their service would meet the needs of the area. The court held "only that, on the special facts of this case, the Commission abused its discretion in donning 'such complete blinders.' United States v. Pierce Auto Freight Lines, Inc., supra, 327 U.S. at 529, 66 S.Ct. 687, to a new situation that it had itself created."

█ While we may think the best evidence would be the actual transportation situation existing after Pilot's new service began, the Commission is not bound to follow that procedure. The Congress empowered the Commission to determine whether the proposed service *"is or will be required by the present, or future public convenience and necessity,"* and in the exercise of such power some projections as to the future needs must be made. Here the Commission made it quite clear that it had considered the potentialities of the new service of Pilot and the other carriers authorized into Florida, and concluded that when such services were fully operative, "the operations of the above carriers and the applicant herein will not result in more service than that needed by the supporting shippers as shown on the record in this proceeding." This conclusion is supported by the record and is well within the Commission's power and discretion.

█ We find that the Commission made adequate findings which are supported by substantial evidence and did not abuse its discretion in refusing to reopen the record to hear additional evidence. We therefore affirm the Commission's decision and dismiss this action.